**Electronically Filed
Supreme Court
SCWC-13-0000428
28-JUN-2016
01:08 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

In the Matter of the

THOMAS H. GENTRY REVOCABLE TRUST

SCWC-13-0000428

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000428; TRUST NO. 02-1-0030)

JUNE 28, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

The present appeal arises from a dispute over the administration of two trusts established by the late Thomas H. Gentry (THG): the THG Revocable Trust (Revocable Trust) and the Marital Trust. Petitioner-Appellant Kiana E. Gentry (Kiana), a beneficiary of both trusts and the wife of the late Mr. Gentry,

sought appellate review of a judgment entered by the Circuit Court of the First Circuit (probate court).[1]  However, the Intermediate Court of Appeals (ICA) dismissed that appeal, and Kiana now seeks review of that dismissal.

After THG's death in 1998, the parties (the Beneficiaries and the Co-Trustees) disputed how the trust assets should be distributed.  The largest remaining trust assets were THG's real estate companies (Gentry Companies).  In December 2007, as a result of several disputes in Probate Court regarding the Co-Trustees' accounting and the proper distribution of trust assets, all of the parties entered into a settlement agreement (Settlement Agreement).  One of the terms of the Settlement Agreement required the Co-Trustees to sell the remaining trust assets within thirty months of the date of the Settlement Agreement, with a possible eighteen-month extension, and to distribute the proceeds to the Beneficiaries.  The Settlement Agreement did not provide for a course of action if the Co-Trustees were unable to sell all of the assets within that time-frame.

The Co-Trustees sold most of the remaining trust assets, but due to the economic recession of 2008, claimed they were either unable to sell the remaining assets or unwilling because the market conditions would result in a sale of the

---

[1]     The Honorable Derrick H. M. Chan presided.

assets far below their true values. Instead of selling, the Co-Trustees proposed distributing the remaining trust assets to the Beneficiaries and terminating the trusts. Some of the Beneficiaries supported this plan, but some opposed it.

Kiana, THG's wife at the time of his death and a beneficiary of both the Revocable Trust and the Marital Trust, strongly opposed the Co-Trustees' distribution plan. Kiana filed a Petition to Enforce Settlement Agreement and Appoint Receiver (Petition to Enforce) in probate court, which would have required the Co-Trustees to liquidate the trust assets. The Co-Trustees filed a Petition for Instructions Regarding Distribution of Remaining Assets and Termination of Trust or in the Alternative Resignation of Co-Trustees (Petition for Instructions), proposing a pro rata distribution of the remaining assets and requesting that the probate court order the proposed pro rata distribution, or in the alternative, allow the Co-Trustees to resign. Kiana opposed this petition on the grounds that the Co-Trustees' proposed distribution violated the terms of the Settlement Agreement.

The probate court entered judgments denying Kiana's Petition to Enforce (Enforcement Judgment) and granting in part and denying in part[2] the Co-Trustees' Petition for Instructions

---

[2] The Co-Trustees' Petition for Instructions was denied only to the extent that the Co-Trustees requested, as alternative relief, permission to
(continued...)

(Distribution Judgment).  In the Distribution Judgment, the probate court ordered the pro rata distribution of the trust assets on hand, and included a table showing specifically how many shares of each of the remaining Gentry Companies each Beneficiary was to receive.

Kiana appealed from the Enforcement Judgment but did not appeal from the Distribution Judgment.  Before the ICA, Kiana argued that the probate court erred by refusing to grant her Petition to Enforce, because it meant the probate court must have either ignored the Settlement Agreement or found that it was invalid and unenforceable.  However, the ICA found that reversing the probate court's denial of the Enforcement Petition would require overturning the Distribution Judgment.  Because Kiana had failed to directly appeal the Distribution Judgment, the ICA determined that her appeal of the Enforcement Judgment constituted a collateral attack on the Distribution Judgment.  Because the ICA concluded that it was unable to grant Kiana effective relief, the ICA dismissed Kiana's appeal as moot.

Kiana filed an Application for Writ of Certiorari.  She presents two questions for this court:

> (1)  Whether the ICA erred when it held that Kiana's appeal was a collateral attack upon the [Distribution Judgment], when Kiana's appeal merely addressed the probate court's improper decision regarding the validity and enforceability of the Settlement

---

² (...continued)
resign as Co-Trustees.

Agreement; and

(2)  Whether the ICA erred when it dismissed Kiana's appeal as moot based on its erroneous conclusion that Kiana's appeal constituted a collateral attack upon the Distribution Judgment, thereby ignoring the merits of the appeal and ignoring the Settlement Agreement.

For the reasons set forth below, we hold that the ICA erred in concluding that Kiana's appeal was an impermissible collateral attack.  We also hold that the ICA erred in concluding that Kiana's appeal was moot.  We thus vacate the ICA's December 5, 2014 judgment on appeal, and remand to the ICA for further proceedings consistent with this opinion.

## I.  Background

### A.  The Thomas H. Gentry Revocable Trust

In November 1994, THG, a prominent real estate developer, was left in a coma after a boating accident.  He eventually passed away on January 15, 1998.

As a result of Mr. Gentry's incapacity, Mark L. Vorsatz (Vorsatz) and Hawaiian Trust Company (HTC) were named as successor co-trustees of the Revocable Trust.  The assets of the Revocable Trust included various personal assets of THG, real estate, and the Gentry Companies, including Gentry Pacific and Gentry Properties.  The beneficiaries of the Revocable Trust are Norman H. Gentry, Tania V. Gentry, Mark T. Gentry, Corin S.N. Gentry-Balding, and Candes S.N. Gentry (THG's children from previous marriages), Arielle N.H. Gentry and Race N.K. Gentry (THG's adult grandchildren), Kiana, Angel D. Vardas (Kiana's

daughter from a previous marriage), and all minor and unborn issue of THG (collectively, Beneficiaries).

When Vorsatz and HTC began administering the Revocable Trust, the financial condition of the Gentry Companies was apparently extremely precarious, with high levels of debt, ongoing litigation, and a lack of liquidity. However, between 1995 and 2005, Vorsatz and HTC worked with the management of the Gentry Companies to stabilize the companies' financial positions. Over that period, the Co-Trustees claimed that over $300,000,000 of assets were sold, external debt was reduced from $275,000,000 to $46,000,000, internal loans were reduced from $102,000,000 to $16,000,000, operating costs were greatly reduced, thirty-nine separate companies were liquidated, and Gentry Homes was returned to profitability.

Some time between 1995 and 1997, it became apparent that HTC was conflicted, and as a result, HTC resigned as co-trustee. Initially, the Beneficiaries agreed that there would be no successor corporate trustee. However, Kiana later filed a petition to appoint a corporate co-trustee. Subsequently, and over Kiana's objection, First Hawaiian Bank was appointed as co-trustee in July 1997.

One of the terms of the Revocable Trust was that if Kiana outlived THG, one-third of the Revocable Trust was to be distributed to a separate trust, designated as the Marital Trust.

The Marital Trust was created and approved by the probate court on January 27, 1995. At the time of his death, THG was married to Kiana, who is the sole income beneficiary of the Marital Trust. Between April 2000 and December 2004, the improved financial condition of the Gentry Companies allowed the Marital Trust to make cash distributions of approximately $4,600,000 to Kiana, in anticipation of dissolving the Revocable Trust.

B.    Probate Court Proceedings and Settlement Agreement

In 2006, the Co-Trustees began planning how to distribute the remaining assets of the Revocable Trust to various subtrusts.[3] On June 15, 2006, the Co-Trustees filed a Petition for Instructions Regarding Initial Funding of Subtrusts, which proposed to distribute $25 million in cash and allocate $35 million worth of assets to the subtrusts. According to the Co-Trustees, Kiana opposed the proposed $25 million cash disbursement to the subtrusts because she believed that the Marital Trust should be funded with cash, while the interests in the Gentry Companies should be left to the other beneficiaries. From 1998 through 2006, the Co-Trustees also filed several petitions for approval of trust accounting, many of which were objected to by Kiana and other beneficiaries.

Due to the Beneficiaries' objections, the Co-Trustees'

---

[3]    The subtrusts under the Revocable Trust are: the Marital Trust, a Generation Skipping Trust (GST), and various subtrusts for children.

Petitions for Approval of Income and Principal Accounts for the Periods January 16, 1998 through December 31, 1999; January 2000 through December 31, 2003; January 1, 2004 through August 29, 2006; January 2006 through March 30, 2007; and the Co-Trustees' Petition for Instructions Regarding Initial Funding of Subtrusts were consolidated and set for trial in November 2007. Subsequent to the setting of trial, in September 2007, the Co-Trustees also filed a petition to approve their 2006 accounting and a Petition for Instructions Regarding Final Funding of Subtrusts, seeking to fully fund the subtrusts and terminate the administration of the Trusts. This Petition was added to the issues to be resolved at trial.

In August 2007, three months before the trial, Kiana settled her claims against the Co-Trustees and withdrew her objections to the Co-Trustees' petitions. However, the trial proceeded to resolve the issues of distributing the trust assets to the Beneficiaries and subtrusts.

Two weeks into trial, the parties (all Beneficiaries and Co-Trustees) entered mediation and agreed to the Settlement Agreement. At a hearing before the probate court on December 7, 2007, the parties put the terms of the Settlement Agreement on the record. The probate court informed the parties that the Settlement Agreement was enforceable and that the court would retain jurisdiction to enforce it. The probate court also went

-8-

over the terms of the Settlement Agreement and ensured that each party understood the terms.

On December 21, 2007, which was also the "effective date of the Settlement Agreement," the parties signed the written Settlement Agreement. Under the terms of the Settlement Agreement, the parties agreed to request that the probate court approve all of the Co-Trustees' prior accountings, up until 2007. The Settlement Agreement also established a plan for the orderly disposition of the trust assets. Pertinent to the present appeal, the Settlement Agreement provided:

> 6. <u>ORDERLY DISPOSITION OF ASSETS</u>.
>
> A. The parties agree to the orderly disposition of certain assets of the Trusts. These assets are the Trusts' interests in TG California Company, Gentry-Pacific, Ltd., Gentry Properties and Gentry Homes, Ltd. The Co-Trustees will sell these entities or their assets within a 30-month period from the Effective Date, with one 18-month extension permitted if supported by good cause as approved the Court. One or more of Gentry's Children and/or their issue are not prohibited from purchasing any entity or asset from the Trusts or from the entities for full fair market value.
>
> B. With respect to the Trusts' ownership of Gentry-Pacific, Ltd., this interest will not be sold until Gentry Investment Properties or its assets have been sold. When Gentry Properties' assets are sold and that entity is liquidated, and all expenses associated with Gentry Properties are paid, Gentry Pacific will make a dividend distribution of all of its cash to the shareholders of Gentry Pacific. Thereafter, Gentry Investment Properties will make a guaranteed payment to Gentry-Pacific, Ltd., sufficient to cover Gentry-Pacific, Ltd.'s reasonable operating expenses for no longer than the aforesaid 30-month period.
>
> . . .
>
> 7. <u>GENTRY INVESTMENT PROPERTIES</u>. Gentry Investment Properties ("GIP") will not be subject to the disposition parameters of paragraph 6 above. As soon as practicable, the Trust's interests in GIP will be

distributed to the marital subtrust, Gentry's Children (free of trust), and to the GST subtrust, Pro Rata. Gentry-Pacific, Ltd., will remain as the general partner of GIP for the aforesaid 30-month period. The parties will use their best efforts to assure that Gentry-Pacific, Ltd., and/or GIP will not use GIP's accumulated income or sales proceeds to start or acquire any new businesses, or to acquire additional real property, or to construct intract improvements. The intent of the parties is that GIP will dispose of its assets over time (unspecified) in a commercially reasonable manner.  In doing so, GIP is not precluded from constructing infrastructure in order to facilitate sales, provided, however, that such improvements may be made only to obtain a final subdivision map and/or to satisfy the requirements of specific buyers under written contracts or as required by law.  Infrastructure includes, but is not limited to, roads, walkways, drainage systems, utilities and other construction consistent with the land use entitlements of the particular property being improved.  Obtaining a final subdivision map includes the ability to post or, if necessary, perform under a bond for the required public improvements.

. . .

9.  FURTHER DISTRIBUTIONS.  The proceeds from the sale of entities or assets under paragraph 6 and/or 7 along with other income of the entities will be distributed to the Trusts promptly (in the ordinary course of business and subject to a reasonable reserve) and will not need to be held for the entire 30-month disposition period.  The Trusts shall distribute income and principal in accordance with the Trust instruments and applicable law.

Subsequent to the Settlement Agreement, the Co-Trustees began to execute a plan of liquidation of the trust assets pursuant to paragraph 6 of the Settlement Agreement. Specifically, the Co-Trustees claimed that they:

(i) distributed $60 million to the beneficiaries and subtrusts; (ii) distributed Gentry Investment Properties to the beneficiaries and subtrust; (iii) sold 5 separate lots within Gentry Properties for a gain of $11 million over book/tax basis; (iv) sold the Trust's interest in Lake Tahoe Blueridge land for a gain of $662,000 over book/tax basis; (v) sold the industrial court and 4 separate lots within GPP, LLC (owned by Gentry Properties) for a gain of almost $22 million over book/tax basis.

The Co-Trustees also stated in December 2010 that the only remaining Gentry Companies held in the trust were Gentry Pacific and Gentry Properties.  The Co-Trustees claimed that the above transactions were accomplished under "incredibly difficult circumstances" due to the 2008 recession.

The Co-Trustees filed in the probate court--in June 2008, February 2009, February 2010, and April 2010--petitions for approval of accounts for various periods from January 1, 2007 through December 31, 2009, and for the approval of attorney's fees accrued by the trusts.  Several Beneficiaries, including Kiana, objected to these petitions.

## C.  Prior Proceedings in the Present Appeal

On August 25, 2010, Kiana filed the Petition to Enforce in probate court.  In the Petition to Enforce, Kiana argued that under the terms of the Settlement Agreement, specifically paragraphs 6 and 7, the Co-trustees were required to take "a series of actions . . . to complete the administration of the Revocable and Marital Trusts within 30 months time of the execution of the Settlement Agreement."  Kiana argued that the Co-Trustees had failed to take these actions and requested that the probate court "order that the necessary steps be taken to effectuate a complete administration of the Revocable and Marital Trusts pursuant to the terms of the Settlement Agreement."

On November 9, 2010, the Co-Trustees filed an objection

-11-

to Kiana's Petition to Enforce.  The Co-Trustees denied that they had failed to implement the Settlement Agreement "to the extent to which it is capable of being prudently implemented," and stated that they would file an additional petition seeking instructions for distribution of the remaining trust assets pro-rata.

On December 1, 2010, the Co-Trustees filed their Petition for Instructions.  The Co-Trustees argued that although they had sold most of the trust assets at a profit pursuant to paragraph 6 of the Settlement Agreement, they did not believe it was in the best interests of the Beneficiaries to sell the remaining assets given market conditions.[4]  The Co-Trustees further argued that although their proposed distribution of the remaining assets would "require the beneficiaries to maintain mutual ownership of certain Gentry Companies for the foreseeable future, the Trustees believe the beneficiaries may achieve a better financial result if they liquidate when the economic conditions improve."

The Co-Trustees requested in the alternative that, if the Beneficiaries decided to proceed with the sale or liquidation of the remaining trust assets, the court approve the Co-Trustees' resignation.

---

[4]     The Co-Trustees asked the probate court to take judicial notice of the "Great Recession" that began in 2008.

On December 2, 2010, Kiana filed her response to the Co-Trustees' Petition for Instructions. Kiana argued that the Co-Trustees' proposed pro rata in kind distribution of the assets was "a direct violation of the Settlement Agreement that required liquidation of the Gentry assets." Kiana explained that:

> [THG] did not want Kiana, or any other Gentry family member, to remain in the home building business, and wanted Kiana to have financial security. The Co-Trustees' proposal to distribute the Gentry assets pro rata in kind, contravenes Tom's wishes (as well as the clear mandate of the Settlement Agreement), and entrenches the Gentry family members, including Kiana, in the home building business.

Kiana further argued that the Settlement Agreement was valid and enforceable, and that the relevant controlling provision was paragraph 6, which required the Co-Trustees to "sell the Gentry assets within 30 months from the Effective Date of the Settlement Agreement." Kiana maintained that the Co-Trustees were required to sell the Gentry assets by June 21, 2010 or apply for an eighteen-month extension, neither of which they did. Thus, according to Kiana, "[t]he Co-Trustees have failed to effectuate the terms of the Settlement Agreement, and their proposed distribution would be a blatant breach of the terms of the Settlement Agreement."

On December 16, 2010, the parties appeared before the probate court for a hearing on five petitions, including Kiana's Petition to Enforce and the Co-Trustees' Petition for Instructions.

-13-

The probate court ordered the Co-Trustees to supplement their Petition for Instructions with a plan for disposition of the assets, and set another hearing for February 10, 2011.

On February 3, 2011, the Co-Trustees filed a supplement to their Petition for Instructions (Supplemental Liquidation Plan), detailing a proposed liquidation plan for the remaining trust assets.

Kiana filed a response objecting to the Supplemental Liquidation Plan. Kiana objected to the Supplemental Liquidation Plan on the grounds that: (a) the plan is contrary to the Settlement Agreement; (b) the Co-Trustees were attempting to limit their liability to only "wilful misconduct"; (c) the plan would give the Co-Trustees unfettered discretion in the sale of the Gentry Companies; and (d) Kiana disagreed with the Co-Trustees' claims that they could not sell the Gentry Pacific and Ashby entities. Kiana thus requested that the probate court deny the Supplemental Liquidation Plan and order the Co-Trustees to amend the plan to address all of the concerns raised by the Beneficiaries.

On March 14, 2011, the Co-Trustees filed a reply to the Beneficiaries' responses. The Co-Trustees requested that the probate court either grant their original Petition for Instructions as filed, or grant their Supplemental Liquidation Plan as filed.

On August 11, 2011, the probate court held a hearing on all matters, but the transcript of this hearing is not in the Record on Appeal.  On October 7, 2011, the probate court held another hearing on all Petitions before the court.

On March 25, 2013, the probate court entered an order denying Kiana's Petition to Enforce.  Also on March 25, 2013, the probate court entered the Enforcement Judgment.  The Enforcement Judgment denied the Petition to Enforce as follows:

> There being no just reason for delay, FINAL JUDGMENT is hereby entered as follows:
>
> 1.  The Prayer for Relief contained in paragraph A of the Petition to Enforce, being a request for the Court to enforce the Settlement Agreement, and order the Co-Trustees to effectuate the terms of the Settlement Agreement as it pertains to the administration of the Revocable and Marital Trusts is DENIED; and
>
> 2.  The Prayer for Relief contained in paragraph B of the Petition to Enforce, being a request for the Court to appoint a neutral receiver should the Co-Trustees resign is DENIED.
>
> 3.  Because this Judgment fully addresses all claims raised in Petitioner Kiana E. Gentry's Petition to Enforce, it is final as to all persons with respect to all issues that the Court considered or might have considered incident to Petitioner Kiana E. Gentry's Petition to Enforce and judgment is entered pursuant to Hawaii Probate Rule 34(a) and in the manner provided by Rule 54(b) of the Hawaii Rules of Civil Procedure.

(Emphasis in original).

On March 25, 2013, the probate court also entered an order and final judgment granting in part and denying in part the Co-Trustees' Petition for Instructions (Distribution Judgment). The Distribution Judgment provided:

> There being no just reason for delay, FINAL JUDGMENT

-15-

is hereby entered as follows:

1. The Petition is GRANTED in part in that the Prayers for Relief contained in paragraphs B and D of the December 1, 2010 Petition are granted such that the remaining assets of the Trust shall be distributed, subject to a reserve in an amount to be determined by the Court after Petition by the Co-Trustees, as follows:

2. The assets on hand shall be distributed, pro rata, in the manner and to the beneficiaries as set forth on Exhibit A attached.

3. Any remaining assets now or hereafter located shall be distributed, pro rata, one-third to the Thomas H. Gentry Marital Trust, and the remaining balance equally to Thomas H. Gentry's five children, namely Norman Gentry, Tania Gentry, Mark Gentry, Corin Gentry-Balding and Candes Gentry; and

4. The Petition is DENIED in part in that the Prayer for Relief contained in paragraph C of the Petition, being a request for Court approval of the resignations of Mark L. Vorsatz and First Hawaiian Bank from their position as successor co-trustees of the Trust, is denied without prejudice.

5. Because this Judgment fully addresses all claims raised in the Co-Trustees' December 1, 2010 Petition, it is final as to all persons with respect to all issues that the Court considered or might have considered incident to the Co-Trustees' December 1, 2010 Petition and judgment is entered pursuant to Hawaiʻi Probate Rule 34(a) and in the manner provided by Rule 54(b) of the Hawaii Rules of Civil Procedure.

(Emphasis in original).

## D. ICA Appeal

On April 24, 2013, Kiana filed a Notice of Appeal, appealing the probate court's Enforcement Judgment. Kiana did not appeal the probate court's Distribution Judgment.

Kiana filed her Opening Brief on January 2, 2014. Kiana argued that by denying her petition, the probate court must have either ignored the Settlement Agreement or deemed it unenforceable. Kiana argued that the probate erred in denying

-16-

her petition because the Settlement Agreement was valid and enforceable and contained all of the essential terms.  Kiana further argued that the Co-Trustees and other Beneficiaries did not raise any material facts that precluded enforcing the Settlement Agreement.  Kiana contended that the arguments of the Co-Trustees and the Beneficiaries that the trust assets should not be sold merely because they would not receive fair market value was contrary to the requirements of the Settlement Agreement.  Finally, Kiana argued that the probate court should have ordered an evidentiary hearing and/or a jury trial when it denied her Petition to Enforce without articulating a reason why it denied the petition.

On March 13, 2014, the Co-Trustees filed their Answering Brief.  The Co-Trustees first argued that Kiana's appeal was moot, and as such, the ICA was without jurisdiction to pass upon its merits.  According to the Co-Trustees, Kiana argued on appeal that the probate court erred in finding that the Settlement Agreement was unenforceable even though the probate court had never made such a finding.  In addition, the Co-Trustees argued that because Kiana did not appeal the probate court's Distribution Judgment and the time for appeal had already run, Kiana no longer had an available remedy.  The Co-Trustees contended that Kiana's requested relief--to enforce the sale of the remaining trust assets--was no longer available, because such

relief would be inconsistent with the probate court's Distribution Judgment, which was not appealed. The Co-Trustees thus argued that Kiana's appeal was a collateral attack on the Distribution Judgment.

The Co-Trustees next addressed the merits of Kiana's appeal. The Co-Trustees first argued that Kiana's claim that the probate court must have determined the Settlement Agreement to be invalid or unenforceable was illogical because the probate court never made this finding and because no party has ever disputed that the Settlement Agreement is enforceable. Next, the Co-Trustees argued that the probate court properly denied Kiana's Petition to Enforce, because the court's granting of the Co-Trustees' Petition for Instructions superseded the Petition to Enforce and rendered it moot. The Co-Trustees also argued that the probate court did not err in denying Kiana's Petition to Enforce, because the question before the court was how to distribute the trust assets after the thirty-month period in the Settlement Agreement had elapsed. According to the Co-Trustees, the Settlement Agreement is silent as to how to distribute the assets if the Co-Trustees were unable to sell them after the thirty months, so the probate court granted relief in equity by approving the distribution of the remaining assets pro rata. The Co-Trustees contended that such equitable relief is reviewed for abuse of discretion, and in this case the probate court took

"extraordinary measures" to try to effectuate the terms of the Settlement Agreement, but ultimately, after ten months of attempting to determine whether liquidation of the assets was feasible, decided that it was not. Thus, according to Co-Trustees, there is nothing to indicate that the probate court abused its discretion in denying Kiana's Petition to Enforce and instead granting the Co-Trustees' Petition for Instructions.

On April 7, 2013, Kiana filed her Reply Brief. Kiana first argued that the only issue on appeal was whether the Settlement Agreement is valid and enforceable. Kiana argued that since the Co-Trustees admitted that the Settlement Agreement is valid and enforceable, the probate court should have enforced it. Kiana also argued that "nothing in the Settlement Agreement excused the Co-Trustees from selling the Gentry Company assets in the event of bad market conditions." Kiana further maintained that the probate court had impermissibly modified the Settlement Agreement by approving the Trustees' proposed pro rata distribution, which was "directly contrary to the Settlement Agreement's requirements that the Gentry Company assets be sold[.]" Thus, according to Kiana, the Co-Trustees' arguments in favor of the pro rata distribution of the trust assets are "void ab initio." (Emphasis in original).

Kiana also argued that her appeal was not moot. Kiana contended that a valid remedy still existed because there were

still remaining trust assets that were subject to the Settlement Agreement and could be sold.  Thus, according to Kiana, the appropriate remedy would be to require the sale of the remaining assets pursuant to the Settlement Agreement.

On October 22, 2014, the ICA entered its Memorandum Opinion.  The ICA first held that Kiana's appeal was a collateral attack on the Distribution Judgment.  The ICA relied on Kim v. Reilly, 105 Hawaiʻi 93, 94 P.3d 648 (2004), in which this court held that a defendant's appeal of the probate court's order granting the plaintiffs' motion to enforce an arbitration award was an improper collateral attack on the arbitration award itself.  The ICA held that, similar to the situation in Kim, "Kiana is attempting to collaterally attack the [Distribution Judgment] through her appeal of the [Enforcement Judgment]."

The ICA next held that because the Distribution Judgment was not appealed, the ICA could not give Kiana effective relief, and as such, her appeal was moot.  The ICA relied on City Bank v. Saje Ventures II, 7 Haw. App. 130, 748 P.2d 812 (1988), in which a defendant appealed the circuit court's order confirming a public auction sale of the defendant's property but did not file a bond to stay enforcement of the confirmation order, and the sale closed while the appeal was still pending. The ICA reasoned that the present case was similar to City Bank because it could not grant Kiana's requested relief without

-20-

overruling the Distribution Judgment, which was not before the ICA due to Kiana's failure to appeal it. Thus, the ICA held that it had no jurisdiction to prevent the pro rata distribution of the remaining trust assets and dismissed the appeal as moot.

On October 31, 2014, Kiana filed a motion for reconsideration of the ICA's opinion. Kiana first argued that the ICA should not have considered the collateral attack doctrine because the Co-Trustees had "failed to advance any cogent argument on it." Next, Kiana argued that the collateral attack doctrine did not apply because her Petition to Enforce and the Co-Trustees' Petition for Instructions did not embrace the same subject matter because the Settlement Agreement included a "litany" of matters, whereas the Petition for Instructions only addressed the distribution of the remaining assets. Kiana also claimed that "Appellees are still able to distribute the assets of the Revocable Trust pursuant to the Distribution Judgment, even if Kiana wins on appeal and the Settlement Agreement is enforced." According to Kiana, such a result is possible because if she won on appeal, certain assets would be sold pursuant to the Settlement Agreement, but any cash proceeds would be subject to distribution in accordance with the pro rata percentages in the Distribution Judgment.

Kiana also argued that the collateral attack doctrine is inapplicable here because the doctrine does not apply to

appeals.  According to Kiana, the ICA's reliance on Kim was misplaced because the collateral attack in Kim was applied in the underlying proceedings, not on an appeal.  Kiana further argues that the Hawaiʻi appellate courts have only ever applied the collateral attack doctrine to underlying proceedings, but never to appeals.

Finally, Kiana argued that her appeal was not moot.  Kiana argued that the ICA's reliance on City Bank was misplaced because in this case, unlike City Bank, the Co-Trustees have not sold or disposed of the assets yet.  Kiana further argued that enforcing the Settlement Agreement would not impeach the Distribution Judgment, because the Co-Trustees could still sell the assets and then distribute the proceeds pro rata.

On November 7, 2014, the ICA denied Kiana's motion for reconsideration.  The ICA entered its Judgment on Appeal on December 5, 2014.  On January 2, 2015, Kiana timely filed her application for writ of certiorari to this court.  On January 20, 2015 the Co-Trustees filed their response.  On January 27, 2015, Kiana filed a reply.  This court issued an Order for Supplemental Briefing on February 26, 2015, asking the parties to specifically address the issues of collateral attack and mootness.  On March 23, 2015, the Co-Trustees filed their supplemental brief.  Kiana filed her supplemental brief on the same day.

We heard oral argument on May 14, 2015.  On May 18,

2015, Kiana filed a motion asking this court to take judicial notice of the sale of Gentry Pacific Design Center and the liquidation of Gentry Properties, GPP, LLC, and GPP Corporation (collectively, the GPP Companies).  Kiana argued that "the documents (and the Co-Trustees' in-court admission that the GPP Companies have been sold) show that [sic] Distribution Judgment and Settlement Agreement are not inconsistent" and stated that the Co-Trustees' claim that "disposition of certain Gentry assets in the Distribution Judgment is contrary to the Settlement Agreement" was "erroneous."  Four documents were attached to the motion:  a certified copy of the warranty deed transferring the Gentry Pacific Design Center property from GPP to the Office of Hawaiian Affairs, recorded at the Land Court on August 20, 2012; a certified copy of the Statement of Termination of Limited Partnership for Gentry Properties filed on November 19, 2012; a certified copy of the Articles of Termination for GPP, LLC filed on October 19, 2012; and a certified copy of the Articles of Dissolution for GPP Corporation filed on October 19, 2012.  The Co-Trustees filed their response in opposition on May 26, 2015, arguing that the documents are irrelevant to Kiana's appeal and to the issues before this court, specifically to whether Kiana's requested relief conflicts with the Distribution Judgment.

## II.  Standard of Review

### A.  Collateral Attack

The applicability of the collateral attack doctrine, which shares similarities with other preclusive doctrines such as collateral estoppel and res judicata, is a question of law which is reviewable de novo.  Smallwood v. City & Cnty. of Honolulu, 118 Hawai'i 139, 146, 185 P.3d 887, 894 (App. 2008).  See also Eastern Savings Bank, FSB v. Esteban, 129 Hawai'i 154, 157, 296 P.3d 1062, 1065 (2013) (applying a de novo standard of review to the question of the applicability of the res judicata doctrine).

## B.   Mootness

"It is axiomatic that mootness is an issue of subject matter jurisdiction.  Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo."  Cnty. of Hawai'i v. Ala Loop Homeowners, 123 Hawai'i 391, 403-04, 235 P.3d 1103, 1115-16 (2010) (internal quotation marks and citation omitted).

### III.  Discussion

## A.   The ICA erred in concluding that Kiana's appeal was an impermissible collateral attack on the Distribution Judgment because her Petition to Enforce was filed before the Distribution Judgment was entered

"A collateral attack 'is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree.'"  Lingle v. Hawai'i Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 186, 111 P.3d 587, 595 (2005)

-24-

(quoting <u>First Hawaiian Bank v. Weeks</u>, 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989)).

In <u>Smallwood</u>, the ICA summarized the collateral attack doctrine and noted that it only applied when a <u>prior</u>[5] action was being attacked:

> The party asserting that an action constitutes an impermissible collateral attack on a judgment must establish that: (1) a party in the present action seeks to avoid, defeat, evade, or deny the force and effect of the <u>prior</u> final judgment, order, or decree in some manner other than a direct post-judgment motion, writ, or appeal; (2) the present action has an independent purpose and contemplates some other relief or result than the <u>prior</u> adjudication; (3) there was a final judgment on the merits in the <u>prior</u> adjudication; and (4) the party against whom the collateral attack doctrine is raised was a party or is in privity with a party in the <u>prior</u> action.

118 Hawaiʻi at 150, 185 P.3d at 898 (emphases added).

This court addressed an issue similar to that in the present case in <u>Lingle</u>, where we held that a petition seeking a declaratory ruling filed during ongoing arbitration proceedings at the Hawaiʻi Labor Relations Board (HLRB) could not be characterized as a collateral attack:

> However, [petitioner] filed its petition for intervention in the HLRB proceedings while the arbitration was still ongoing and, thus, well <u>before</u> the arbitration award was rendered or confirmed. As such, the [petitioner]'s petition for intervention and subsequent appeal of the HLRB's order cannot, as

---

[5]   Appellate courts in Hawaiʻi have typically only applied the collateral attack doctrine in situations in which a second lawsuit has been initiated challenging a judgment or order obtained from a prior, final proceeding. <u>See, e.g.</u>, <u>Gamino v. Greenwell</u>, 2 Haw. App. 59, 59, 625 P.2d 1055, 1056 (1981) (holding that a party in a family court case may not "pursue a civil court action involving different parties and different issues when the result sought would contradict a final and unappealed order issued in the family court case").

> [respondent] contends, be characterized as attempts to "impeach a judgment" because there was no judgment or award to impeach at the time [petitioner] brought its petition.

107 Hawaiʻi at 186, 111 P.3d at 595 (emphasis in original).

Kiana filed her Petition to Enforce Settlement Agreement and Appoint Receiver on August 25, 2010. The Co-Trustees did not file their Petition for Instructions Regarding Distribution of Remaining Assets until December 1, 2010, over three months later.[6] Under our holding in Lingle, Kiana's filing of her Petition to Enforce was not an attempt to impeach any prior adjudication. Kiana filed her petition three months before the trustees filed their petition for instructions, "well before" any decision on the Co-Trustees' petition "was rendered or confirmed." 107 Hawaiʻi at 186, 111 P.3d at 595 (emphasis in original). Moreover, as discussed below, her appeal of the probate court's denial of her Petition to Enforce was not an attempt to defeat or evade the Distribution Judgment, because the Settlement Agreement deals with a number of issues that are not contemplated by the Distribution Judgment. As such, the collateral attack doctrine does not apply in this case, and the ICA erred in holding that the doctrine barred Kiana's appeal.

---

[6] For our purposes, it does not matter that the probate court issued final judgments on both petitions on the same day, March 25, 2013. As discussed above, the date of filing, not the date of resolution, is dispositive for our purposes.

**B.    The ICA erred in concluding that Kiana's appeal was moot because she may still be able to receive meaningful relief and because the Petition to Enforce and the Distribution Judgment do not embrace the same subject matter**

After concluding that Kiana's appeal constituted a collateral attack, the ICA held that it could not give Kiana any effective relief because it had no jurisdiction to prevent distribution of the trust assets pursuant to the Distribution Judgment, and thus dismissed the appeal as moot. Gentry, mem. op. at 6-8.  In her Application, Kiana argues that ICA's mootness ruling was in error because "it was based on [the ICA's] erroneous determination that Kiana's appeal was subject to the collateral attack doctrine."  Kiana also argues that her appeal is not moot because the assets that are subject to the Settlement Agreement have not yet been sold and remain under the Co-Trustees' control.  She asserts that this court can grant her effective relief by enforcing the Settlement Agreement and ordering the Gentry Assets to be sold and proceeds distributed in accordance with the Distribution Judgment.  Further, Kiana argues that because the "Settlement Agreement was a contract resolving a litany of matters [and] . . . the Distribution Judgment only addressed the distribution of remaining assets in the Revocable Trust," her appeal of the Petition to Enforce does not "embrace the same subject matter" as the Distribution Judgment. Additionally, Kiana contends that the Probate Court's authority

under Hawaiʻi Probate Rules (HPR) Rule 36 would allow it to vacate or amend the distribution judgment, and thus her appeal is not moot and can be heard on the merits.[7]  We find her arguments persuasive.

1. **Kiana's appeal is not moot because the Probate Court's authority would allow it to vacate or amend the Distribution Judgment based on a decision on the merits in this appeal, meaning she can still receive effective relief**

First, we address Kiana's contention that the Probate Court's authority under HPR Rule 36 would allow it vacate or amend the Distribution Judgment based on a decision on the merits in this appeal.

---

[7]     HPR Rule 36 (Relief from Order) provides in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.  Upon petition and upon such terms as are just, the court may relieve an interested person from an order or judgment for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence which by due diligence could not have been discovered in time before the order was issued;
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) the order is void;
(5) the order has been satisfied, released, or discharged, or a prior order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the order should have prospective application; or
(6) any other reason justifying relief from the operation of the order.  The petition shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the order or proceeding was entered or taken.  A petition under this subdivision (b) does not affect the finality of an order or suspend its operation.

HPR Rule 36(b) provides that the Probate Court may relieve a party "from an order or judgment" when "the order has been satisfied, released, or discharged, or a prior order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the order should have prospective application[,]" or for "any other reason justifying relief[.]" This court has held that the Probate Court has the authority to set aside judgments where there is "sufficient cause." Kam Chin Chun Ming v. Kam Hee Ho, 45 Haw. 521, 532, 371 P.2d 379, 388 (1962) (explaining that "[t]he proper course would have been for the probate court to determine whether it would 'open the judgment'").

Here, nothing indicates that Kiana would be prevented from seeking post-judgment relief from the probate court. Because the Probate Court retains the power to reopen and amend the Distribution Judgment pursuant to HPR Rule 36(b), Kiana's appeal could be heard on the merits without being moot because she retains an "effective remedy." In re Doe Children, 105 Hawaiʻi 38, 56, 93 P.3d 1145, 1163 (2004) ("[T]he mootness doctrine is properly invoked where events . . . have so affected the relations between the parties that the two conditions for justiciability relevant on appeal--adverse interest and effective remedy--have been compromised.") (internal quotation marks and citation omitted, ellipses in original). It appears that the

most appropriate provision in HPR Rule 36(b) for these purposes would be HPR Rule 36(b)(5), which provides that a court may relieve an interested person of a judgment or order if "the order has been satisfied, released, or discharged, or a prior order upon which it is based has been reversed or otherwise vacated, or <u>it is no longer equitable that the order should have prospective application</u>."  (Emphasis added).

2. **Additionally, Kiana's appeal is not moot because this court can still grant her relief based on her appeal of the Petition to Enforce the Settlement Agreement**

"[A] case is moot if the reviewing court can no longer grant effective relief."  <u>Kaho'ohanohano v. State</u>, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (2007) (quoting <u>City Bank</u>, 7 Haw. App. at 134, 748 P.2d at 815).  "Stated another way, the central question before us is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."  <u>Gator.com Corp. v. L.L. Bean, Inc.</u>, 398 F.3d 1125, 1129 (9th Cir. 2005) (internal quotation marks and citations omitted).  "[An appellate court] may not decide moot questions or abstract propositions of law."  <u>Life of the Land v. Burns</u>, 59 Haw. 244, 250, 580 P.2d 405, 409 (1978) (internal quotation marks and citation omitted).

> It is well-settled that the mootness doctrine encompasses the circumstances that destroy the justiciability of a case previously suitable for determination.  A case is moot where the question to be determined is abstract and does not rest on existing facts or rights.  Thus, the mootness doctrine is properly invoked where

> "events . . . have so affected the relations
> between the parties that the two conditions for
> justiciability relevant on appeal--adverse
> interest and effective remedy--have been
> compromised." Wong v. Board of Regents,
> University of Hawaii, 62 Haw. 391, 394, 616 P.2d
> 201, 203-4 (1980).

In re Thomas, 73 Haw. 223, 225-26, 832 P.2d 253, 254 (1992)

(ellipsis in original).

In finding that Kiana's appeal was moot, the ICA relied upon City Bank, in which a mortgagee brought a foreclosure action, and the circuit court granted summary judgment and permitted a sale at public auction. 7 Haw. App. at 132, 748 P.2d at 814. After the auction, the mortgagee filed a motion to confirm the sale, which the circuit court granted. Id. Six days later, the sale closed. Id. The defendants filed a motion for reconsideration, which the circuit court denied, and the defendants appealed. Id. at 132-33, 748 P.2d at 814. The ICA dismissed the appeal as moot because the defendants had failed to file a supersedeas bond to stay the sale, the sale had closed, and as such, the ICA could no longer grant any effective relief. Id. at 132, 748 P.2d at 814.

City Bank, however, is factually distinguishable on the grounds that the trust assets in the present case have not yet been distributed and still remain in the Co-Trustees' control. The Co-Trustees do not dispute that the assets which are subject to the terms of the Settlement Agreement have not been sold or

disposed of, and still remain in the Revocable Trust.[8]

Additionally, this court can grant relief to Kiana because the

Distribution Judgment and Settlement Agreement are not

inconsistent.  The Distribution Judgment calls for shares[9] of

Gentry Pacific and Gentry Properties to be distributed among

trustees--shares that no longer exist because the GPP companies

have been liquidated.  However, as Kiana contends in her motion

---

[8]     Kiana asks this court to take judicial notice of a certified copy of the warranty deed transferring the Gentry Pacific Design Center property from GPP to the Office of Hawaiian Affairs, recorded at the Land Court on August 20, 2012.  Although the Co-Trustees assert that the document is irrelevant to the issue at hand, they do not dispute its veracity or accuracy.

This court has previously taken judicial notice of matters not raised by the parties in their initial briefings or included in the record on appeal.  In Gao v. State, Dep't of Attorney Gen., __ Hawai'i __, __ P.3d __ (2016), Gao requested at oral argument that we take judicial notice of the State's Performance Appraisal System's Supervisory Manual.  Although the manual did not specifically mention either party in that case, we took judicial notice because the equity of the situation dictated that we do so.  Id. at __, __ P.3d at __ (citing Eli v. State, 63 Haw. 474, 478, 630 P.2d 113, 116 (1981) ("Where the equity of the situation dictates, we will use our discretion to take judicial notice of matters of which courts may properly take judicial notice but which are not part of the record on appeal." (citation omitted)); Williams v. Aona, 121 Hawai'i 1, 11 n. 6, 210 P.3d 501, 511 n. 6 (2009) (taking judicial notice of collective bargaining agreement because agreement was "matter of public record and easily verifiable")).

Pursuant to Hawai'i Rules of Evidence (HRE) Rule 201(b), courts may take judicial notice of facts that are "either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  "Judicial notice may be taken at any stage of the proceeding." HRE Rule 201(f).  Here, the document in question is a matter of public record and easily verifiable, and is germane to the issues in this appeal.  Thus, we take judicial notice of the warranty deed pursuant to HRE Rule 201.  See Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawai'i 505, 518 n.5, 364 P.3d 213, 226 n.5 (2015).

Although Kiana asks us to take judicial notice of several other documents, in view of our resolution of the issues herein we need not consider those documents and accordingly do not determine whether it would be appropriate to take judicial notice of them.

[9]     According to the Distribution Judgment, of the 49,000 Gentry Pacific Shares, 16,333.333 were to go to the Marital Subtrust, and each child was to receive a share of 6,533.333.  Of the 90% Membership in Gentry Properties, 30% was to go to the Marital Subtrust, and each child was to receive a share of 12%.

for judicial notice, disposition of the assets pursuant to the Settlement Agreement would not impeach the Distribution Judgment, since the Co-Trustees can still distribute the proceeds from the sale of the GPP companies in conformance with the distribution percentages.  Finally, all of the parties to this action, including both the Trust beneficiaries and Appellee Co-Trustees, are also parties to the Settlement Agreement.  As such, an appellate court could grant Kiana effective relief, and this issue is not moot.

3.  **Kiana's appeal is not moot because the Settlement Agreement and the Distribution Judgment do not embrace the same subject matter**

Additionally, the ICA erred in holding that Kiana's appeal of the Enforcement Judgment was moot because the Settlement Agreement is much broader and implicates many more issues than the Distribution Judgment.

A case is moot when "neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law."  Los Angeles Cty. v. Davis, 440 U.S. 625, 631 (1979).  "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  Knox v. Serv. Emps. Int'l Union, Local 1000, 132 S. Ct. 2277, 2287 (2012).  The "heavy burden of establishing mootness lies with the party asserting a case is moot."  Ouachita Riverkeeper, Inc. v. Bostick, 938 F. Supp. 2d 32, 43 (D.D.C.

-33-

2013).  Mootness as to one issue does not preclude hearing other issues in a case.  See Grant v. District of Columbia, 908 A.2d 1173, 1178 (D.C. Cir. 2006) (noting that plaintiff's voluntary retirement mooted his request for employment reinstatement, but not his requests for other relief); Kennedy v. District of Columbia, 654 A.2d 847, 852 (D.C. Cir. 1994) (holding that a case was not moot where "unresolved issues . . . constitute a sufficient 'concrete stake' in the litigation").

Kiana correctly argues that the "Settlement Agreement was a contract resolving a litany of matters," and does not "embrace the same subject matter" as the Distribution Judgment. The Distribution Judgment "only addressed the distribution of remaining assets in the Revocable Trust in a pro rata manner in accordance with an attached chart" and denied the "request for Court approval of the resignations of Mark L. Vorsatz and First Hawaiian Bank from their position as successor co-trustees of the Trust[.]"  To the contrary, the Settlement Agreement addressed a number of issues other than distribution, including sale of the Trusts' interests in TG California Company, Gentry-Pacific, Ltd., Gentry Properties, and Gentry Homes, Ltd. within a 30-month period from the effective date, Trustee Appointment for Various Subtrusts, a Generation Skipping Trust, Attorneys' Fees and Costs, the Right of Withdrawal, Trustees' Standard of Care and Fees, and "Periodic Meetings," among other items.  Because the

Petition to Enforce the Settlement Agreement covered a much broader scope than the Distribution Judgment, the ICA could have still granted Kiana some effective relief on appeal of the Enforcement Judgment.  Thus, the ICA erred when it determined that the probate court's ruling on the Distribution Judgment mooted Kiana's appeal of the Enforcement Judgment.

## IV.  Conclusion

For the foregoing reasons, we vacate the ICA's December 5, 2014 judgment on appeal dismissing Kiana's appeal as moot and remand to the ICA for further proceedings consistent with this opinion.

| | |
|---|---|
| Margery Bronster and Jae B. Park for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Alan T. Yoshitake and Carroll S. Taylor for respondents | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

