**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000644
05-JUN-2025
08:02 AM
Dkt. 51 SO**

NO. CAAP-22-0000644


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


THE ESTATE OF ELIZABETH SHAPIRO GILMORE
also known as Alana Gilmore and Betsy Cole, Deceased.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CLP-20-0000105(1))


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

Petitioner-Appellant **Samantha** S. Cole appeals from the

Circuit Court of the Second Circuit's[1] (**probate court**)

October 18, 2022 Judgment in favor of Respondent-Appellee

**Amanda** P. Cole and several orders.[2]

---

[1] The Honorable Kirstin M. Hamman presided. The circuit court was sitting in probate and is thus subsequently referred to as the probate court. See Hawai'i Revised Statutes (**HRS**) § 603-21.6 (2016) (indicating circuit courts have the power to appoint and remove personal representatives, compel personal representatives "to account in all respects for the discharge of their official duties[,]" and "[d]o all other things as provided in chapter 560").

[2] Samantha appeals from the following orders: October 13, 2022 Order Granting Amanda's "Petition for Order Terminating [Samantha] as Personal Representative and Dismissing Probate Action" (**Order Dismissing Probate**

(continued . . .)

In 1968, twins Samantha and Amanda were born to Elizabeth Shapiro Gilmore (**Decedent**) and her first husband in Boston, Massachusetts. Decedent divorced her first husband in 1978, and married **Donald** D. Gilmore in 1985.

In 1997, Decedent was diagnosed with terminal cancer and decided to move to Maui. On November 20, 2005, Decedent died intestate in Kīhei, Maui.

According to Samantha, between Decedent's death and early December 2005, she and Amanda discussed their "joint desire to obtain and maintain [Decedent]'s photographs, portraits, paintings, graphic designs, and other personal property, and" decided to "proceed with obtaining D. Gilmore's interest in the Decedent's personal property in exchange for" their interest in Decedent's individual retirement account.

According to Amanda, she, Donald, and Samantha, gathered in Decedent and Donald's home and divided up Decedent's personal belongings "amicably and by agreement." "With Donald Gilmore's permission, Amanda and Samantha divided certain personal property belonging to their mother . . . , namely her

---

(. . . continued)

**Action**); January 31, 2022 "Order Denying [Samantha]'s Petition/Non-Hearing Motion for Reconsideration"; and September 9, 2021 "Order Denying [Samantha]'s Petition to Compel [Amanda] to Return Personal Property and Distribution of Estate[.]"

paintings and her photographs.  By agreement . . . , Samantha took the paintings and Amanda took the photographs."

Both Amanda and Samantha submitted statements from Donald indicating he agreed with their decision to split Decedent's artwork and photographs.

For the next fourteen years, Samantha possessed the paintings and Amanda possessed the photographs.

In 2019, Donald assigned Amanda all rights, title, and interest in Decedent's photographs and negatives, including copyright(s) to those images.  About a year later, Donald assigned his portion of any copyright to Decedent's works (including "archive of creations and artwork, photographs, negatives, contact sheets, documents and writings of all sorts, including her journals") to Amanda.

In 2020, Samantha petitioned the probate court for adjudication of intestacy and to appoint her personal representative of Decedent's estate, which the court granted. Ultimately, the probate court found that Decedent's personal belongings, including the paintings and photographs, were distributed in 2005 and, thus, were not part of Decedent's estate.  The probate court terminated Samantha as personal representative and dismissed the probate action.

On appeal, Samantha challenges her dismissal as personal representative of Decedent's estate.[3]  Amanda challenges Samantha's standing to bring this appeal.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error as discussed below, and affirm.

**(1)**  We first address Amanda's contention that the appeal should be dismissed because "Samantha lacks standing to bring this appeal as the Personal Representative of the Decedent[.]"  Amanda argues "[t]he termination of appointment of a personal representative terminates the personal representative's authority to represent the estate in any pending or future proceeding[,]" following Hawaiʻi Revised Statutes (**HRS**) § 560:3-608 (2018).

HRS § 560:3-608 provides in pertinent part:

> Termination ends the right and power pertaining to the office of personal representative as conferred by this chapter or any will, except that a personal representative, at any time prior to distribution or until restrained or

---

[3]  Samantha also challenges the probate court's denial of her petition to compel immediate return of Decedent's personal belongings.  Based on our decision, we need not reach this issue.

We note that Samantha's opening brief fails to comply in material respects with Hawaiʻi Rules of Appellate Procedure Rule 28(b).  To promote access to justice, we nonetheless consider Samantha's appeal.  See Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (mentioning "court's policy of hearing cases on the merits where possible"); cf. generally Erum v. Llego, 147 Hawaiʻi 368, 380-81, 391, 465 P.3d 815, 827-28, 838 (2020) (noting court's policy of liberally interpreting pleadings of pro se litigants "in order to promote access to justice").

> enjoined by court order, may perform acts necessary to protect the estate and may deliver the assets to a successor representative.
>
> . . . .
>
> Termination does not affect the jurisdiction of the court over the personal representative, but terminates the personal representative's authority to represent the estate in any pending or future proceeding.

(Formatting altered.) In Hawai'i, standing is prudential rather than jurisdictional. Tax Found. of Hawai'i v. State, 144 Hawai'i 175, 188, 439 P.3d 127, 140 (2019).

Though it appears Hawai'i has not determined whether a terminated personal representative can appeal an order removing them as personal representative of an estate, other jurisdictions allow a terminated personal representative to appeal a probate or trial court's order terminating them as personal representative. See, e.g., In re Est. of Unke, 583 N.W.2d 145, 146, 150 (S.D. 1998); In re Est. of Anderson-Feeley, 174 P.3d 512, 512, 513 (Mont. 2007); but see Simon v. Simon, 957 N.E.2d 980, 988 (Ind. Ct. App. 2011) (once removed, personal representative cannot "prosecute an appeal of the removal order").

We agree with those jurisdictions. To hold otherwise would render the order terminating Samantha as personal representative unreviewable.

**(2)**   We now turn to Samantha's contention that the probate court abused its discretion in terminating her as personal representative of Decedent's estate.

In terminating Samantha as personal representative, the probate court determined "equity does not support a redivision of the Decedent's property" and cited HRS § 560:3-108(a)(5) (2018).[4]  (Formatting altered.)

HRS § 560:3-108(a)(5) indicated a "formal testacy proceeding" may begin more than five years after a decedent's death if in the court's discretion it is equitable to distribute property of the decedent's estate:

> A formal <u>testacy proceeding may be commenced at any time after five years from the decedent's death if, in the discretion of the court it would be equitable to do so</u>, for the purpose of establishing an instrument to direct or control the ownership of property passing or distributable after the decedent's death from one other than the decedent when the property is to be appointed by the terms of the decedent's will <u>or is to pass or be distributed as a part of the decedent's estate</u> or its transfer is otherwise to be controlled by the terms of the decedent's will.

(Formatting altered, emphases added.)  "'Testacy proceeding' means a proceeding to establish a will or determine intestacy." HRS § 560:1-201 (2018).

Here, the probate court found Decedent's personal belongings were distributed in 2005 and were no longer part of

---

[4]  The probate court cited "HRS § 560:3-108(5)" in the Order Dismissing Probate Action, but there is no such sub-section in HRS § 560:3-108. Rather, HRS § 560:3-108(a)(5) discusses the five-year commencement period the probate court referred to in the Order Dismissing Probate Action.

the estate. The probate court further found that "equity does not support a redivision of the Decedent's property[.]" As a result, the probate court determined it was "no longer equitable or necessary that Samantha act as Personal Representative."

Because the probate court considered the parties' filings and examined HRS § 560:3-108(a)(5) in the context of the facts and circumstances of this case, we cannot say the court abused its discretion in determining that equity did not require redivision of Decedent's belongings seventeen years later.

Samantha argues the probate court collaterally attacked its August 10, 2020 order granting her petition for adjudication of intestacy and appointing her personal representative when it entered its Order Granting Amanda's "Petition for Order Terminating [Samantha] as Personal Representative and Dismissing Probate Action" (**Order Dismissing Probate Action**) and removed her as personal representative.

"A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." In re Thomas H. Gentry Revocable Tr., 138 Hawai'i 158, 168-69, 378 P.3d 874, 884-85 (2016) (citations omitted). "Appellate courts in Hawai'i have typically only applied the collateral attack doctrine in situations in which a

second lawsuit has been initiated challenging a judgment or order obtained from a prior, final proceeding."  Id. at 169 n.5, 378 P.3d at 885 n.5.

Here, there was no second lawsuit and, thus, no collateral attack.

Samantha further maintains the probate court disregarded e-mails appended to the February 4, 2022 memorandum in opposition to the petition seeking dismissal of the probate action and disregarded HRS § 560:3-912 (2018).

But in the Order Dismissing Probate Action, the probate court noted it "considered Amanda's Petition and Reply, Samantha's Memorandum in Opposition, and the parties' respective supporting declarations and exhibits, supplemental submissions, the records, files and rulings herein, as well as the representations of counsel" before dismissing the probate action in its entirety, and the record indicates these filings referenced HRS § 560:3-912.

Thus, the probate court did not disregard HRS § 560:3-912 or the e-mails appended to the memorandum in opposition when it entered its Order Dismissing Probate Action.

Based on the foregoing, we affirm the probate court's October 18, 2022 Judgment; October 13, 2022 Order Dismissing Probate Action; January 31, 2022 "Order Denying [Samantha]'s Petition/Non-Hearing Motion for Reconsideration"; and

8

September 9, 2021 "Order Denying [Samantha]'s Petition to Compel [Amanda] to Return Personal Property and Distribution of Estate[.]"

DATED:  Honolulu, Hawaiʻi, June 5, 2025.

On the briefs:                          /s/ Katherine G. Leonard
                                        Acting Chief Judge
Ivan L. Van Leer,
for Petitioner-Appellant.               /s/ Clyde J. Wadsworth
                                        Associate Judge
Deborah K. Wright,
Douglas R. Wright,                      /s/ Sonja M.P. McCullen
(Wright & Kirschbraun),                 Associate Judge
for Respondent-Appellee.