**Electronically Filed
Supreme Court
SCWC-10-0000181
21-DEC-2016
07:56 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN RE:  MARN FAMILY LITIGATION

SCWC-10-0000181

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-10-0000181; MASTER FILE NO. 00-1-MFL)

DECEMBER 21, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

## I.  INTRODUCTION

This appeal is the most recent development in the Marn family litigation, which has been ongoing for almost twenty years and concerns the ownership and control of the Marn family business.  In brief, in 1998 Petitioner-Appellant Alexander Y. Marn (Alexander) sought a declaratory judgment and specific performance regarding his rights to the family business.  Despite a jury demand, a bench trial was held and the Circuit Court of the First Circuit (circuit court) held in favor of Respondent-

Appellee James K.M. Dunn (Dunn). The Intermediate Court of Appeals (ICA) affirmed the circuit court's judgment on all counts.

At issue for our review is whether Alexander was denied his right to a jury trial when the circuit court decided the underlying dispute by bench trial.

Because Alexander was constitutionally entitled to a trial by jury on his action for declaratory judgment, and because the record indicates that a jury trial was properly demanded and preserved, we hold that the ICA gravely erred in affirming the circuit court's decision to conduct a bench trial in this case. As such, the ICA's March 23, 2016 judgment on appeal, which affirmed the circuit court's October 25, 2010 partial final judgment, is vacated and remanded on the ground that Alexander was entitled to a jury trial.

## II.  BACKGROUND

This case arises from a partnership dispute between four siblings over the operation of a family business, McCully Associates, and the siblings' respective interests in the business.

The Marn parents built a successful family business through Ala Wai Investment, Inc., a Hawaiʻi corporation, and McCully Associates (MA), a Hawaiʻi limited partnership. Ala Wai Investment was the corporate general partner of MA, and MA

developed and managed various Marn properties, including the McCully Shopping Center.

Four of the Marn children (James, Alexander, Annabelle, and Eric) served as limited partners and owned equal shares of MA. Annabelle died in 1996 and her interest in MA was left to her husband, James Dunn, as the trustee of the Annabelle Y. Dunn Trust (AYD Trust). The underlying dispute in this case arose between some of the Marn siblings and Dunn over Annabelle's interest in MA.

## A.    Circuit Court Proceedings

Over the last seventeen years, various suits were brought by members of the Marn family over the ownership and control of MA and its properties. These suits were consolidated for discovery and case management, but not for trial. Of the cases that were filed, only Civil No. 98-4706-10 (the Buyout case) and Civil No. 98-5371-12 (the Judicial Accounting case)[1] reached trial. On appeal for our review is a single issue regarding the Buyout case.

On October 29, 1998, Alexander and Eric filed the original complaint for the Buyout case,[2] seeking both declaratory

---

[1]    In the Judicial Accounting case, James Marn and the AYD Trust sought a full and complete judicial accounting of MA and an appointment of a receiver for MA and Ala Wai Investment, Inc.

[2]    Alexander filed a first amended complaint on April 27, 2001, essentially raising the same grounds and seeking the same relief.

relief and specific performance regarding the partners' rights to buy-out Annabelle's interest in MA. Alexander and Eric asserted that two agreements, the McCully Associates Partnership Agreement (Partnership Agreement) and the Transfer Restriction Agreement (Transfer Agreement), both drafted in 1982 and signed by all siblings, were created "to ensure that the Marn Properties would stay in the Marn Family."

According to Alexander and Eric, under the Partnership and Transfer Agreements, a partner was prohibited from disposing of his or her interest in MA without first offering to sell his or her interest to the other partners. Accordingly, Alexander and Eric asserted that when Annabelle died and her interest in MA passed to Dunn through the AYD Trust, Dunn was obligated to offer to sell this interest in accordance with the terms of the Partnership and Transfer Agreements.

As such, under the heading "Claim for Declaratory Relief," Alexander and Eric made the following request for relief:

> 25. Plaintiffs believe that the trustees of the Revocable Trust, the personal representatives of the Estate of Annabelle Dunn (Defendants James Dunn and Stephen Marn), and/or such persons who currently hold Annabelle's Partnership interests, are obligated to sell those interests in accordance with the terms of the Partnership Agreement and the Transfer Restriction Agreement[.]
> 26. In the alternative and if the sale of Annabelle's Partnership interest has not been triggered by the foregoing events, Plaintiffs believe that they were deceived or, at a minimum, reasonably operated under a mistake of fact, in their consent to the holding of Annabelle's interest in the partnership in the name of the Revocable Trust. Had they known that the Marn Properties would not be kept within the

4

Marn family, they would not have consented to the purported assignment.

27. Plaintiffs have deposited into escrow 1) earnest money and 2) documents ready for execution, to effect and facilitate the transfer of Annabelle's Partnership interest as required by the foregoing agreements. The escrow was ready to close on or before September 28, 1998. Plaintiffs made demand upon James Dunn and Stephen Marn to sell Annabelle's Partnership interest in accordance with the foregoing agreements, but they refused to do so.

28. As a result, a genuine dispute has arisen between the parties, which is ripe for decision. A decision at this time will materially aid the parties in their own planning and in the operation of the Partnership.

Additionally, under the heading "Claim for Specific Performance," Alexander and Eric made the following request for relief:

If the Court agrees that Defendants are obligated to sell Annabelle's interest in the Partnership to the remaining limited partners, then Plaintiffs request that the Court enforce the terms of the purchase and sale provisions, as the Plaintiffs are ready, willing and able to perform and they have no adequate remedy at law, because the underlying asset of the Partnership is real property, the loss of which cannot be adequately compensated by damages.

Plaintiffs pray judgment as follows:

1. That process issue out of and under the seal of this court, citing and summoning the defendants to appear and respond as required by law; and

2. That the court determine that those Defendants who hold the Partnership interest originally held in the name of Annabelle Y. Dunn are obligated to sell the same to the remaining limited partners; or, in the alternative,

3. That the Consent to Assignment of Annabelle's Partnership interest to her Revocable Trust was ineffective to waive Plaintiffs' rights to purchase Annabelle's interest;

4. That this Court order the sale of the Annabelle Y. Dunn partnership interests in McCully Associates to the other limited partners of the Partnership at a price consistent with sections 1,2,3 and 4 of the McCully Associates Partnership Agreement and the Transfer Restriction Agreement annexed as Exhibit "B" thereto.

5. For their cost of court, reasonable attorneys [sic] fees and such other relief as is just.

On December 4, 1998, the AYD Trust filed an answer to

5

the complaint, admitting that it had refused to sell Annabelle's partnership interest and denying that "any transfer of partnership interest is 'required.'" The AYD Trust also included in its answer a demand for jury trial. On December 11, 1998, the AYD Trust filed a first amended answer to the complaint, which also included a jury demand.

In the October 15, 1999[3] and February 1, 2002[4] orders setting trial for the Buyout case, it was noted that the case was set for a jury trial.

In June of 2005, the court's appointed receiver for MA (the Receiver) filed a motion for summary judgment or, in the alternative, a motion to strike jury demands in the Buyout and Judicial Accounting cases. Eric filed a memorandum in opposition to the motion to strike jury demand, which Alexander joined. In its order granting in part the Receiver's motion for summary judgment, the court[5] concluded that it was unnecessary to decide the jury issue at that point.

During a pretrial hearing on August 24, 2005, the trial by jury issue was discussed for the Buyout case. Wayne Sakai, counsel for Eric and Linda Marn, argued that there should be a

---

[3]     The Honorable Kevin S.C. Chang presided.

[4]     The Honorable Virginia Lea Crandall presided.

[5]     The Honorable Victoria S. Marks presided over the proceedings from this point forward.

6

jury trial for the Buyout case because there were factual and legal issues that needed to be resolved. Steven Guttman, counsel for Dunn,[6] argued that a jury trial had not been demanded for the Buyout case and that there was no right to demand a jury trial at this time. The circuit court agreed with Guttman.

> [MR. SAKAI]: Your Honor, if I may address and add to what Mr. Guttman and Mr. Freed said is we believe that another -- the third issue would be ripe for the Court's adjudication without being enmeshed in the I.R.S. criminal investigation would be the buy-out. . . . It just goes to the ability of Eric and Alexander Marn's ability to buy-out the Dunn, Annabelle Dunn's share.
>     And our position is that's a valid agreement, and that should be heard by the Court. And if the Court hears that, there's another catch to it is, <u>I believe, that there's factual determinations to be made in addition to legal issues, than [sic] a jury trial should be warranted on that aspect of it.</u> Because it does not involve at all the I.R.S. It does involve factual and legal issues, and I think we need -- not I think, I -- <u>I believe we need a jury to determine the factual issues, and the Court to determine the legal issues.</u>
>     But the buy-out is very isolated, and it's very clean, your Honor, very clean. <u>And I think that requires a very short jury trial that, basically, there's not too much for the jury to determine.</u> I think the factual issues are there. If they want to do a stipulated facts, we can do that, but I -- I don't think they want to do that. <u>So we need a jury to determine the facts of the case</u>, but I think that's a -- a document that cries out to be adjudicated separate and apart from the I.R.S. issue.
>     The buy-out is very important, and it could have significant impact upon the current mediation right now. I'm only talking about the Dunn --
> [THE COURT]: Uh-huh.
> [MR. SAKAI]: The Dunn -- Annabelle Dunn matter, and that, you know, that would be, I think, very helpful. And I'd like to add that to the -- the package, so to speak.
> [MR. GUTTMAN]: Your Honor, as -- as to that matter . . . <u>There was no jury demand. There is no right to a jury at this date to be requesting a jury.</u> I -- I think in terms of the factual issues, 90 percent to the facts, I don't think there's any disagreement. I think the – the actual facts

---

[6]    Attorneys James J. Bickerton and Alan B. Burdick represented Dunn in the initial proceedings in this case, when the AYD Trust filed its December 4, 1998 answer to the complaint and demand for jury trial and December 11, 1998 first amended answer to the complaint and jury demand.

> are -- are very narrow that that [sic] are in dispute. . . .
>       But there's only a small number of facts that are
> actually in dispute.  Most of it is -- is real clear.
> . . .
> [THE COURT]: There are a lot of files.  <u>But as I recall, I
> think Mr. Guttman is correct that there was no separate jury
> demand in the buy-out.</u>

(Emphasis added).

On November 29, 2006, the circuit court entered a trial setting order, in which the "Jury-waived" box was now checked. Trial was held on April 10 and 11, 2007.

On July 9, 2007, the circuit court entered its findings of fact, conclusions of law, and order in favor of the AYD Trust. The circuit court made the following conclusions of law:

> 1.    Mrs. Dunn properly assigned all of her limited partnership interest in McCully Associates to her Trust with the consent of the general partner and all other limited partners pursuant to the terms of the Partnership Agreement.
> 2.    The Assignment effected a substitution of her Trust as a limited partner of McCully Associates.
> ...
> 4.    After Mrs. Dunn died, the buyout provision of the Partnership Agreement was not applicable because Mrs. Dunn's Trust was already substituted as the limited partner of McCully Associates.
> ...
> 6.    Independent of the Assignment . . . Plaintiffs cannot force the AYD Trust to sell its limited partnership interest in McCully Associates because Plaintiffs materially breached the terms of the Partnership Agreement.
> 7.    Plaintiffs['] failure to properly and timely make their first installment payment of the purchase price within 90 days of Mrs. Dunn's death and, in fact, waiting approximately 25 months after Mrs. Dunn's death before ever expressing an interest in exercising the buyout right set forth under the Partnership Agreement is a material breach of the Agreement's buyout provision.
> ...
> 12.   The AYD Trust did not breach the Partnership Agreement's "buyout" provision, while Plaintiffs materially and repeatedly breached the said provision.  Therefore, Plaintiffs are not entitled to specific performance. Furthermore, granting Plaintiffs the equitable remedy of specific performance would in effect reward Plaintiffs for the violations of their contractual duties owed to the AYD

8

Trust, an inequitable result as to the AYD Trust.

As such, the circuit court ordered that the AYD Trust was not obligated to sell its limited partnership interest in MA to Alexander or any other partners of McCully Associates.

On October 25, 2010, the circuit court entered a partial final judgment for both the Buyout and Judicial Accounting cases. As to the Buyout case, the circuit court entered a judgment in favor of the AYD Trust, holding that the AYD Trust was not obligated to sell its partnership interest to any of the MA partners and denying Alexander's claim for specific performance. The circuit court also awarded the AYD Trust attorneys' fees and costs in the sum of $54,498.44. As to the Judicial Accounting case, the circuit court held that MA and Ala Wai Investment, Inc. were to be dissolved and the assets liquidated.

## B.   ICA Proceedings

On March 28, 2015, Alexander filed an amended opening brief before the ICA and raised nine points of error on appeal. Relevant to our review is Alexander's second point, which argued that the circuit court erred in conducting a bench trial instead of a jury trial in the Buyout case.[7] Alexander argued that the

---

[7]   Alexander also argued that he was entitled to a jury trial for the Judicial Accounting case. However, Alexander did not raise that argument in his application for writ of certiorari.

9

Buyout case was an action for declaratory judgment because it requested that the court determine the parties' rights under the Partnership Agreement and was, "therefore an action on a contract." Alexander contended that, as an action for declaratory judgment, the Buyout case should have been tried by jury pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 57.

In its answering brief, the AYD Trust made three arguments as to why Alexander was not entitled to a jury trial for the Buyout case. First, the AYD Trust argued that, as an action for specific performance without a claim for damages, the Buyout case was purely equitable and rightly tried by the court instead of by a jury. Second, the AYD Trust argued that Alexander waived the issue because he never demanded a jury trial for the Buyout case, and also made no objections at the trial court level when a bench trial was ordered by the court. Third, the AYD Trust contended that "even if [Alexander] had shown a proper objection, and a right to a jury trial, the issue of a buyout of the AYD Trust's [sic] . . . is now moot. . . . [because McCully Associates] was dissolved by operation of law."

In his reply, Alexander argued that, while he did not demand a jury trial in the Buyout case, the AYD Trust made such a demand in its December 4, 1998 answer to the complaint and in its December 11, 1998 first amended answer to the complaint.

Alexander contended that pursuant to HRCP Rule 38(d), the AYD Trust's demand for a jury trial could not be withdrawn without the consent of the parties, which never occurred.

On February 26, 2016, the ICA entered a memorandum opinion affirming the circuit court's October 25, 2010 partial final judgment on all counts. Relevant to our review is the ICA's disposition of Alexander's argument that the circuit court erred in not affording Alexander a jury trial in the Buyout case.

First, the ICA explained that the Hawai'i Constitution and HRCP Rule 38(a) provide a right to a jury trial in suits at common law. In order to determine whether a suit is "at common law" the ICA noted that courts look to the nature of the remedy, specifically whether the cause of action seeks "legal" or "equitable" relief. The ICA further explained that claims for specific performance are equitable in nature and are not claims arising at common law. The ICA did not address whether an action for declaratory judgment was legal or equitable.

The ICA then examined Alexander's claim in the Buyout case, and concluded that the "sole remedy [Alexander] sought was specific performance." The ICA cited to Alexander and Eric's circuit court complaint, which stated that they had "no adequate remedy at law, because the underlying asset of the Partnership is real property, the loss of which cannot be adequately compensated

11

by damages."  As such, the ICA held that Alexander was not entitled to a jury trial in the Buyout case.[8]

On March 23, 2016, the ICA entered a judgment on appeal, which affirmed the circuit court's October 25, 2010 partial final judgment.

### III.  STANDARDS OF REVIEW

#### A.  Jury Trial

The denial of a demand for jury trial is a question of law reviewable de novo.  Credit Assocs. of Maui, Ltd. v. Brooks, 90 Hawaiʻi 371, 372, 978 P.2d 809, 810 (1999).

#### B.  Mootness

Mootness is an issue of subject matter jurisdiction.  "Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo."  Cty. of Hawaiʻi v. Ala Loop Homeowners, 123 Hawaiʻi 391, 403-04, 235 P.3d 1103, 1115-16 (2010) (quoting Hamilton ex rel. Lethem v. Lethem, 119 Hawaiʻi 1, 4-5, 193 P.3d 839, 842-43 (2008)).

### IV.  DISCUSSION

The sole question before this court is whether the ICA erred in affirming the circuit court's decision to hear this case

---

[8]     The ICA also held that Alexander was not entitled to a jury trial in the Judicial Accounting case because "[a] judicial accounting is equitable in nature."

without a jury.  In short, Alexander argues that he was entitled to a jury trial because he raised claims for declaratory relief. In turn, the AYD Trust argues that Alexander waived this argument by not raising it at the circuit court level, that the argument is now moot, and that the ICA correctly ruled that Alexander had no right to a jury trial.  We address each of those arguments in turn.

**A.    The Jury Trial Issue was Properly Preserved at the Circuit Court and ICA Levels.**

Hawaiʻi Revised Statutes (HRS) § 641-2 (Supp. 2004) provides that the "appellate court may correct any error appearing on the record, but need not consider a point that was not presented in the trial court in an appropriate manner."  See also Okuhara v. Broida, 51 Haw. 253, 255, 456 P.2d 228, 230 (1969) ("[W]e are restricted in granting relief because of the rule in this jurisdiction which prohibits an appellant from complaining for the first time on appeal of error to which he has acquiesced or to which he failed to object.").

The AYD Trust argues that the issue before this court is waived because Alexander did not object to the bench trial at the circuit court level.  However, it does appear from the record that both Eric and Alexander expressed objections to having a bench trial for the Buyout case at the circuit court level.

13

For example, after the Receiver filed a motion to strike the jury trial for the Buyout case, Eric filed a motion in opposition in which Alexander joined. Additionally, during the August 2005 pretrial hearing, Eric Marn's attorney argued that a jury trial should be preserved for the Buyout case. Thus, the record does indicate that both Eric and Alexander objected to having a bench trial for the Buyout case, and that the issue of trial by jury was discussed during a pretrial hearing. See Lii v. Sida of Hawaiʻi, Inc., 53 Haw. 353, 355, 493 P.2d 1032, 1034 (1972) ("We consider the right to a jury trial to be inviolate in the absence of an unequivocal and clear showing of a waiver of such right either by express or implied conduct. This court will indulge every reasonable presumption against the waiver of such right.").

For this reason, the AYD Trust's argument that the issue is now waived is unpersuasive.

**B.    The Jury Trial Issue is Not Moot.**

This court has stated that "[a] case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law." Ala Loop Homeowners, 123 Hawaiʻi at 405, 235 P.3d at 1117 (quoting Kona Old Hawaiian Trails Grp. v. Lyman, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987)). As a

14

general rule, a "case is moot if the reviewing court can no longer grant effective relief." Id. (quoting Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007)). "Stated another way, the central question before us is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1129 (9th Cir. 2005) (internal quotation marks and citations omitted).

The AYD Trust argues that the "issue of Petitioners' entitlement to a jury trial regarding the determination of rights of the MA limited partners under the Transfer Restriction Agreement is moot because . . . such determination would not serve any valid purpose in light of the fact that MA has already been dissolved and its assets liquidated."

Alexander argues that, while MA has been dissolved and its assets liquidated,[9] there has yet to be a final accounting of the proceeds or a determination of the distribution of the proceeds to the partners. As such, Alexander contends that the outcome of the Buyout case would determine each partner's interest in the proceeds.

To the extent that Alexander is still seeking to

---

[9] Alexander does not appear to dispute that MA has been dissolved and its assets sold.

acquire Annabelle's interest in MA or MA property, that relief appears to be unavailable because MA no longer exists and the property has been sold.  However, to the extent that Alexander is seeking other relief at this point, perhaps in the form of proceeds from the sale of MA and its properties, the issue is not moot and can be considered by this court.  See In re Gentry Revocable Tr., 138 Hawaiʻi 158, 171-72, 378 P.3d 874, 887-88 (2016) (stating that a case is not moot, even when the assets at issue have already been sold, if the proceeds from the sale have yet to be distributed).  In short, a court could still grant Alexander effective relief in the form of a greater share in the proceeds generated from MA's dissolution.  Thus, Alexander's claim is not moot.

**C.   Alexander Has a Right to a Jury Trial in the Buyout Case.**

There are two aspects to the jury trial issue.  The first is whether Alexander was entitled to a jury trial in the Buyout case.  If he was entitled to a jury trial, the second question is whether trial by jury was properly demanded and preserved.

**1.   Alexander was entitled to a trial by jury in the Buyout case because he requested legal relief in the form of a declaratory judgment.**

Article 1, section 13 of the Hawaiʻi Constitution mandates that "[i]n suits at common law where the value in

16

controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved."  See also HRCP Rule 38(a) ("The right of trial by jury as given by the Constitution or a statute of the State or the United States shall be preserved to the parties inviolate.").

As the Hawaiʻi Constitution notes, the right to a jury trial is preserved for suits at common law.  "The test to determine whether a suit is at common law is . . . whether the cause of action seeks legal or equitable relief."  Lee v. Aiu, 85 Hawaiʻi 19, 29, 936 P.2d 655, 665 (1997) (internal quotation marks omitted).  Thus, "courts look to the nature of the remedy to determine whether a jury trial is warranted."  Id.

In its memorandum opinion, the ICA concluded that Alexander was not entitled to a jury trial in the Buyout case because "the sole remedy Marn sought was specific performance[,]" which at common law was a claim in equity.  Alexander argues that he was entitled to a jury trial in the Buyout case because he also sought a declaratory judgment concerning his rights under the Partnership and Transfer Agreements, and that this was an action for legal relief.

Alexander's argument has merit.  Hawaiʻi law preserves the right to trial by jury for declaratory judgments.  First, actions for declaratory judgments are provided for in HRS § 632-1

17

(1993), which states in part that "[r]elief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties . . . and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding."[10]  See also Island Ins. Co., Ltd. v. Perry, 94

---

[10]   HRS § 632-1 provides in full:

> **Jurisdiction; controversies subject to.**  In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

> Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is

(continued...)

Hawaiʻi 498, 502, 17 P.3d 847, 851 (App. 2000) ("Actions for declaratory judgments are authorized by Hawaiʻi Revised Statues (HRS) § 632-1 (1993).").

Second, HRCP Rule 57, titled "Declaratory Judgments," provides that a jury trial may be requested in actions for a declaratory judgment:

> The procedure for obtaining a declaratory judgment pursuant to statute shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate, except that declaratory relief may not be obtained in any controversy with respect to taxes.

Third, Hawaiʻi case law has preserved the right to a jury trial in declaratory actions. For instance, in Kimball v. Lincoln, 72 Haw. 117, 809 P.2d 1130 (1991), this court considered the issue of right to jury trial in actions for specific performance and declaratory judgment. At issue in Kimball was whether there was a valid lease of agricultural land. 72 Haw. at 118-19, 809 P.2d at 1131. The plaintiff sought both a declaration that the lease was valid and specific performance in enforcing the lease. Id.

In deciding whether there was a right to jury trial in

---

[10](...continued)
    recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

Kimball, this court first addressed the claim for specific performance:

> Appellant's claim for specific performance is clearly equitable in nature and not a claim arising at common law. Accordingly, appellant had no right to demand a jury trial of the claim for specific performance under HRCP 38(b) since the right to demand a jury trial is expressly limited to issues triable of right by a jury under that rule.

Id. at 126, 809 P.2d at 1134.

In contrast, this court noted that "[t]he declaratory judgment count stands on a different footing." Id. This court further explained:

> This count . . . raise[s] questions of whether a lease was in fact intended to be entered into, and whether there was a sufficient meeting of the minds of the parties on all the material terms of the lease to constitute a contract. These are legal issues, historically tried at common law in assumpsit or, in some cases, in covenant.

Id. at 126, 809 P.2d at 1134-35. This court concluded that "[c]learly, the issues raised by the complaint for declaratory relief are legal issues, triable of right by a jury[.]" Id.

Similarly, in this case, Alexander requested both a declaratory judgment and specific performance. Under the former, Alexander sought a declaration of his rights, and the rights of the other MA partners, under the Partnership and Transfer Agreements. As this court concluded in Kimball, such issues are legal in nature. 72 Haw. at 126, 809 P.2d 1134-35.

As such, it appears that Alexander was entitled to a jury trial in the Buyout case. The ICA erred by focusing

20

exclusively on the specific performance aspect of Alexander's complaint without examining his claim for declaratory relief. Next, we address whether a trial by jury was properly demanded and preserved in this case.

###    2.    Trial by jury was properly demanded and preserved in the Buyout case.

HRCP Rule 38 provides the procedural mechanism for demanding and waiving a trial by jury. HRCP Rule 38(b) and (d) provide in relevant part:

> **(b) Demand.** Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d). . . .
> **(d) Waiver.** The failure of a party to serve and file a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

Pursuant to HRCP Rule 38(b), the AYD Trust filed a demand for jury trial in the Buyout case twice: first with its answer to the complaint on December 4, 1998, and second with its first amended answer to the complaint on December 11, 1998. It appears from the record that there were no deficiencies as to timing or service of process. Thus, a trial by jury was properly demanded in the Buyout case when the AYD Trust filed its December 4, 1998 and December 11, 1998 demands; Alexander did not need to file his own jury demand to preserve this right. See Mehau v.

21

Reed, 76 Hawaiʻi 101, 112, 869 P.2d 1320, 1331 (1994) ("[I]t is well settled in this jurisdiction that when either of the litigating parties properly demanded jury, it fixed the status of the case and the other party was not required to file his [or her] own demand.") (internal quotation marks and citations omitted).

As to HRCP Rule 38(d), no citation to the record has been provided that shows that the demand for jury trial was withdrawn with the consent of the parties. In fact, in its briefings before this court and the ICA, the AYD Trust does not address Alexander's contentions that the jury demand was never withdrawn. Additionally, on the October 5, 1999 and February 1, 2002 order setting trial, the Buyout case was designated as a jury trial. Because a trial by jury was demanded for the Buyout case and because this demand was never withdrawn once it was made, a trial by jury was properly preserved under HRCP Rule 38.

Confusion over the jury trial arose in August of 2005, when a pretrial hearing was held. At that hearing, Eric Marn's attorney, Mr. Sakai, argued that there should be a trial by jury while Dunn's attorney, Mr. Guttman, argued that a jury trial had not been requested for this case:

> [MR. SAKAI]: Your Honor, if I may address and add to what Mr. Guttman and Mr. Freed said is we believe that another -- the third issue would be ripe for the Court's adjudication without being enmeshed in the I.R.S. criminal investigation

22

> would be the buy-out. . . .
>         But the buy-out is very isolated, and it's very clean, your Honor, very clean.  <u>And I think that requires a very short jury trial that</u>, basically, there's not too much for the jury to determine.  I think the factual issues are there.  If they want to do a stipulated facts, we can do that, but I -- I don't think they want to do that.  <u>So we need a jury to determine the facts of the case</u>, but I think that's a -- a document that cries out to be adjudicated separate and apart from the I.R.S. issue.
>         The buy-out is very important, and it could have significant impact upon the current mediation right now.  I'm only talking about the Dunn --
> . . .
> [MR. GUTTMAN]: <u>There was no jury demand.  There is no right to a jury at this date to be requesting a jury.</u>  I -- I think in terms of the factual issues, 90 percent to the facts, I don't think there's any disagreement.  I think the - the actual facts are -- are very narrow that that [sic] are in dispute.

(Emphasis added).  The circuit court agreed with Dunn's attorney and concluded that "there was no separate jury demand in the buy-out."  Then, in November 2006, the court entered another order setting trial, in which the box entitled "Jury-waived" was checked.

In summary, Alexander was entitled to a jury trial for the Buyout case.  In the early stages of the litigation, a jury trial was properly demanded, preserved, and designated for the Buyout case.  Years later, during a pretrial hearing, it was represented to the court that there had been no jury demand for the Buyout case.  The circuit court erred when it agreed and re-designated the case as a jury-waived trial.

## V.   CONCLUSION

For the reasons stated above, the ICA's March 23, 2016 judgment on appeal, which affirmed the circuit court's October 25, 2010 partial final judgment, is vacated and remanded on the ground that Alexander was entitled to a trial by jury. This holding does not disturb the ICA's judgment as to Alexander's other points, as these points were not raised to or reviewed by this court.

| | |
|---|---|
| Alexander Y. Marn, individually, and Alexander Y. Marn, and Ernestine L. Marn, as Co-trustees of the Revocable Living Trust Agreement of Alexander Y. Marn, petitioners-pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| Steven Guttman and Dawn Egusa for James. K. M. Dunn, as Successor Trustee of the Annabelle Y. Dunn Trust, | /s/ Michael D. Wilson |
| Mark B. Desmarais for James Y. Marn, Jr. | |
| Louise K.Y. Ing and Zachary M. DiIonno for Liquidating Receiver S. Steven Sofos | |

