**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000045
23-FEB-2022
07:49 AM
Dkt. 58 MO**

NO. CAAP-17-0000045

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

MORTEZA KHALEGHI and KAREN KHALEGHI, Plaintiffs-Appellants,
v.
INDYMAC VENTURE, LLC; ONEWEST BANK, FSB, Defendants-Appellees,
and
DOE DEFENDANTS 1-20; and DOE ENTITIES 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 2CC151000071)

**MEMORANDUM OPINION**
(By: Leonard, Presiding Judge, Hiraoka and McCullen, JJ.)

The parties to this appeal are before us for the third time. Plaintiffs-Appellants Morteza Khaleghi and Karen Khaleghi (collectively, the **Khaleghis**) and Defendant-Appellee **Indymac** Venture, LLC were parties to a mortgage foreclosure lawsuit. That lawsuit was terminated on the merits; Indymac foreclosed the Khaleghis' mortgage, sold the mortgaged property, and obtained a deficiency judgment against the Khaleghis. The Khaleghis appealed. We affirmed. The Khaleghis did not petition the supreme court for review. The Khaleghis satisfied the deficiency judgment.

The Khaleghis then filed the action below. They claimed that Indymac committed unfair and deceptive acts or practices (**UDAP**) in violation of Hawaii Revised Statutes (**HRS**) § 480-2 while prosecuting the foreclosure action, and was

unjustly enriched by the deficiency judgment.  Indymac moved to dismiss.  The circuit court granted the motion.  The Khaleghis appealed.  We vacated the dismissal on procedural grounds and remanded for further proceedings.

On remand Indymac moved for judgment on the pleadings or for summary judgment.  The circuit court granted the motion based on res judicata (claim preclusion).  A **Final Judgment** was entered on January 11, 2017.[1]  The Khaleghis appealed.  For the reasons explained below, we affirm the Final Judgment.

## BACKGROUND

### The Foreclosure Action

The Khaleghis are California residents.  In 2007 they signed a $5.3 million promissory note to build a second home on Maui (the **Property**).  The note was secured by a mortgage on the Property.  The note and mortgage were assigned to Indymac.

The Khaleghis failed to make payments due on the note.  Indymac filed a mortgage foreclosure action in July 2009 (**Foreclosure Action**).  The Khaleghis were served with the complaint.  They did not answer the complaint.  Their defaults were entered.

Indymac moved for summary judgment and a decree of foreclosure in October 2010.  In November or December 2010 (while Indymac's motion for summary judgment was pending) the Khaleghis received a third-party offer to purchase the Property for $3.4 million, contingent upon Indymac's consent.  The offer was made using Hawaii Association of Realtors forms, and contained several other contingencies.  The Khaleghis accepted the offer on December 3, 2010, but Indymac did not consent.[2]  The third-party sale never closed.

---

[1]     The Honorable Rhonda I.L. Loo presided.

[2]     The record does not reflect whether any of the other contingencies had, or could have, been satisfied.

Indymac's motion for summary judgment was granted.  A foreclosure commissioner was appointed.  The commissioner was authorized to take possession of the Property and sell it at public auction.  Findings of fact, conclusions of law, an order granting Indymac's motion for summary judgment, and a judgment of foreclosure (**Foreclosure Judgment**), were entered on February 16, 2011.[3]

The Khaleghis moved for relief from the Foreclosure Judgment under Rule 60(b)(4) of the Hawai‘i Rules of Civil Procedure (**HRCP**)[4] "insofar as said Judgment purports to allow for entry of a deficiency judgment against the Khaleghis."  They argued: (1) the circuit court lacked personal jurisdiction over them because HRS § 634-23 gave the circuit court in rem jurisdiction over the Property only; (2) they were not properly served with the foreclosure complaint; (3) their due process rights were violated by the way Indymac obtained a deficiency judgment against them; and (4) their note and mortgage were governed by California law, which does not permit deficiency judgments.  Their motion was denied.  They filed a notice of appeal.  That appeal was docketed as CAAP-11-0000560.

Meanwhile, on June 3, 2011, a foreclosure auction was conducted.  The commissioner reported that Indymac had submitted the high bid, for $909,246.  The Khaleghis then moved to set aside their defaults.  They argued (among other things) that they had a meritorious defense because Indymac's $909,246 bid was unreasonably low based on the $3.4 million third-party offer (to which Indymac did not consent).

---

[3]     The Honorable Shackley F. Raffetto presided over the Foreclosure Action.

[4]     HRCP Rule 60 provides, in relevant part:

    **(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.**  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void[.]

Indymac moved to confirm the foreclosure sale.  The Khaleghis opposed the motion, again contending they had accepted the $3.4 million offer for the Property but could not close the transaction because Indymac did not consent.  The Khaleghis argued that Indymac's $909,246 bid was unconscionably low because the fair market value of the Property was $3.4 million (based upon the third-party offer).  They did not, however, argue that the amount of any deficiency judgment should be the difference between the amount they owed Indymac and the fair market value of the Property, rather than the amount of the high bid at the foreclosure auction.[5]  The Khaleghis also filed a motion to stay the foreclosure proceedings pending a proposed mediation.

On September 21, 2011, the circuit court conducted a combined hearing on Indymac's motion to confirm the foreclosure sale, the Khaleghis' motion to set aside their defaults, and the Khaleghis' motion to stay.  Four bidders appeared at the hearing.  The record does not reflect whether the person who had made the $3.4 million offer was one of the bidders.  Bidding was reopened.  The highest bid was for $2.788 million.  The circuit court orally confirmed the foreclosure sale for $2.788 million and denied the Khaleghis' motions to set aside their defaults and to stay proceedings.

Orders denying the Khaleghis' motions to set aside their defaults and to stay the foreclosure proceedings were entered on October 7, 2011.  A judgment confirming the foreclosure sale was entered on October 18, 2011 (**Judgment Confirming Sale**).  On November 17, 2011, the Khaleghis filed a

---

[5]     Had that argument been made and accepted, the ruling would have prospective effect only, and would not have reduced the amount of the deficiency judgment against the Khaleghis.  See HawaiiUSA Fed. Credit Union v. Monalim, 147 Hawaiʻi 33, 45, 48-49, 54 & n.32, 464 P.3d 821, 833, 836-37, 842 & n.32 (2020) (adopting "majority rule" that mortgagor has "the right to insist that the greater of the fair market value of the real estate or the foreclosure sale price be used in calculating the deficiency[ judgment,]" but "only to foreclosure cases in which a deficiency judgment is first entered after the date of this opinion.").  In Monalim the supreme court declined to allow the Monalims to apply the newly adopted rule because a deficiency judgment against the Monalims had already been entered by the circuit court.  Id. at 54 n.32, 464 P.3d at 842 n.32.

notice of appeal from the Judgment Confirming Sale. That appeal was docketed as CAAP-11-0000843. It did not address the order denying the Khaleghis' motion to set aside their defaults.

A deficiency judgment against the Khaleghis was entered on December 8, 2011. An amended deficiency judgment for $2.5 million was entered on January 23, 2012 (**Deficiency Judgment**). The Khaleghis did not appeal from the Deficiency Judgment.

We consolidated the Khaleghis' appeals. The Khaleghis' consolidated opening brief raised two points of error: (1) the Khaleghis were not properly served with Indymac's foreclosure complaint; and (2) Indymac was entitled to a judgment against the Property only, and had no right to a deficiency judgment against the Khaleghis individually.

On their second point of error, the Khaleghis argued that HRS §§ 634-23 and 634-24 gave the circuit court <u>in rem</u> jurisdiction over the Property only. They did not argue (as they did in their motion for relief from the Foreclosure Judgment) that their note and mortgage were governed by California law, which did not allow deficiency judgments. They did not argue (as they did in their motion to set aside their defaults and in their opposition to Indymac's motion to confirm the foreclosure sale) that the high bid in the foreclosure auction was not reasonable because they had received a bona fide offer to purchase the Property for $3.4 million. They also did not argue that the amount of the Deficiency Judgment should have been the difference between the amount they owed Indymac and the $3.4 million alleged fair market value of the Property, rather than the $2.788 million high bid at the re-opened foreclosure auction. <u>See</u> note 5.

We held: (1) the Khaleghis were properly served with Indymac's foreclosure complaint; and (2) the Khaleghis were personally liable for the Deficiency Judgment. <u>Indymac Venture, LLC v. Khaleghi</u>, Nos. CAAP-11-0000560, CAAP-11-0000843, 2014 WL 3708116, at *2-3 (Haw. App. July 25, 2014) (SDO) (**<u>Khaleghi I</u>**).

5

The Khaleghis did not petition the Hawaiʻi Supreme Court for certiorari.

On January 9, 2015, the Khaleghis paid $3.3 million to Indymac to satisfy the Deficiency Judgment.  That terminated the Foreclosure Action.

**The Action Below**

On February 13, 2015, the Khaleghis (through new counsel) filed the action below against Indymac and Defendant-Appellee OneWest Bank, FSB (collectively, **Indymac**).[6]  An amended complaint was filed on April 6, 2015.  An errata was filed on April 7, 2015.

The Khaleghis' corrected amended complaint alleged one count of UDAP in violation of HRS § 480-2 and one count of unjust enrichment.  As described by the Khaleghis, the "gravamen" of their claims was "that Indymac (1) wrongly rejected a $3.4 million offer on the [P]roperty . . . and (2) lulled [them] into non-action [in the Foreclosure Action] by causing them to believe that the proceedings against them would be in rem and would not lead to a deficiency judgment."  They claimed damages of $3.3 million (the amount they paid to satisfy the Deficiency Judgment), trebled pursuant to HRS § 480-13.

Indymac moved to dismiss the amended complaint as a sanction under HRCP Rule 11.  The circuit court treated the motion as a motion to dismiss under HRCP Rule 12(b)(6), and granted the motion.

The Khaleghis appealed.  We held: "The circuit court abused its discretion in treating [Indymac's] HRCP Rule 11 Motion for sanctions as an HRCP Rule 12(b)(6) motion to dismiss." Khaleghi v. Indymac Ventures, LLC, No. CAAP-15-0000486, 2016 WL 4268709, at *4 (Haw. App. Aug. 11, 2016) (mem.) (**Khaleghi II**).

---

[6]    The Khaleghis alleged that OneWest Bank was formed to acquire certain of Indymac's assets and liabilities, and was Indymac's successor in interest to the Khaleghis' note and mortgage.  OneWest Bank and Indymac did not dispute those allegations, were jointly represented in the circuit court, and are jointly represented on this appeal.

We vacated the dismissal and remanded for proceedings consistent with our memorandum opinion.  The judgment on appeal was entered on September 8, 2016.  No party petitioned for certiorari.

### Proceedings on Remand

On remand, Indymac filed a motion for judgment on the pleadings under HRCP Rule 12(c) or, in the alternative, for summary judgment under HRCP Rule 56.  The Khaleghis opposed the motion.  The motion was heard on December 1, 2016.  The circuit court granted the motion, stating in part:

> Res judicata precludes this action.  The Count [sic] finds that there was a final judgment on the merits.  Both parties are the same or in privity with the parties in the original suit, and the claims, defenses, and issues presented are identical to the ones decided in the original suit ***or to a claim or defense that might have been properly litigated in the first action but was not litigated or decided***.

(Emphasis added.)  On January 11, 2017, the circuit court entered a written order and the Final Judgment.  This appeal followed.

### POINTS OF ERROR

The Khaleghis' opening brief raises five points of error:

1.   "The Trial Court Erred by Accepting [Indymac]'s Res Judicata Argument, because [sic] They Did Not Establish the Right to Assert Res Judicata in the First Place";

2.   "The Trial Court's Grant of Dismissal based [sic] on Res Judicata Was Error because [sic] that Defense Did Not Apply and/or Had Been Waived";

3.   "The Trial Court Erred by Granting Dismissal with Prejudice at such [sic] an Early Stage of the Case, where [sic] No Factual Record Had Been Developed regarding [sic] the Trial Court's Ground for Dismissal and the Khaleghis' Arguments";

4.   "The Trial Court Erred by Wholly Ignoring the Issue of Whether California Law Governed the

Parties' Underlying Dispute, thereby [sic] Inherently and Wrongly Holding that It Did Not"; and

5. "The Trial Court Abused Its Discretion by Not Allowing [the Khaleghis] the Opportunity to Amend."

(Emphasis omitted.)

## STANDARDS OF REVIEW

### Judgment on the Pleadings

We review an order granting an HRCP Rule 12(c) motion for judgment on the pleadings de novo using the same standard applied by the circuit court. In re Off. of Info. Pracs. Op. Letter No. F16-01, 147 Hawaiʻi 286, 294, 465 P.3d 733, 741 (2020).

### Summary Judgment

We review an order granting summary judgment de novo using the same standard applied by the circuit court. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018).

### Preclusive Doctrines

"Application of res judicata [(claim preclusion)] is a question of law. Questions of law are reviewed de novo under the right/wrong standard." PennyMac Corp. v. Godinez, 148 Hawaiʻi 323, 327, 474 P.3d 264, 268 (2020) (quoting E. Sav. Bank, FSB v. Esteban, 129 Hawaiʻi 154, 157, 296 P.3d 1062, 1065 (2013)).

The applicability of collateral estoppel (issue preclusion) is also a question of law reviewed de novo. See In re Thomas H. Gentry Revocable Tr., 138 Hawaiʻi 158, 168, 378 P.3d 874, 884 (2016).

"The applicability of the collateral attack doctrine, which shares similarities with other preclusive doctrines such as collateral estoppel and res judicata, is a question of law which

8

is reviewable de novo."  In re Gentry Revocable Tr., 138 Hawaiʻi at 168, 378 P.3d at 884 (citations omitted).

### Amending Pleadings

The denial of leave to amend a complaint is reviewed for abuse of discretion.  Kealoha v. Machado, 131 Hawaiʻi 62, 74, 315 P.3d 213, 225 (2013).

### DISCUSSION

### Standard for Decision

We must first decide what standard applied to the circuit court's decision-making on Indymac's dispositive motion. The motion requested a judgment on the pleadings under HRCP Rule 12(c) or, alternatively, a summary judgment under HRCP Rule 56.  A motion for judgment on the pleadings is (as the name suggests) decided based upon the allegations contained in the pleadings.[7]  However, if matters outside the pleadings are presented and not excluded by the court, the motion is treated as one for summary judgment and disposed of as provided by HRCP Rule 56.  See HRCP Rule 12(c).

Indymac's motion argued claim preclusion and was supported by a number of exhibits: copies of pleadings, orders, motions, memoranda, findings of fact and conclusions of law, and other documents filed in the Foreclosure Action; and copies of the Khaleghis' consolidated opening brief and our summary disposition order in Khaleghi I.  The Khaleghis' memorandum in opposition to Indymac's motion was supported by an affidavit of counsel, but presented no matters outside the pleadings.  Under similar circumstances we held:

> [I]n ruling on a rule [sic] 12(c) motion, a court can also
> take judicial notice of other facts.  See Marsland v. Pang,
> 5 Haw. App. 463, 475, 701 P.2d 175, 186 (1985) (citing 5C
> Charles Alan Wright & Arthur R. Miller, Federal Practice and

---

[7]     For purposes of HRCP Rule 12(c), "pleadings" are the complaint, answer, counterclaim and answer thereto, cross-claim and answer thereto, and third-party complaint and answer thereto.  See HRCP Rule 7(a).

Procedure § 1367 (1969)) ("A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.").

Where collateral estoppel is used as a defense in an HRCP Rule 12(b)(6) motion, judicial notice extends to prior related proceedings. See Ellis v. Crockett, 51 Haw. 45, 55, 451 P.2d 814, 821 (1969). Because a Rule 12(c) motion serves "much the same purpose" as a Rule 12(b)(6) motion, except that it comes after the conclusion of the pleadings, the same rule applies. Marsland, 5 Haw. [App.] at 474, 701 P.2d at 186. Judicial notice of the prior proceedings extends to "the truth of facts asserted in documents such as orders, judgments[,] and findings of fact and conclusions of law because of the principles of collateral estoppel, res judicata, and the law of the case." State v. Kotis, 91 Hawaiʻi 319, 342, 984 P.2d 78, 101 (1999) (citation omitted).

Here, Appellees raised the defenses of res judicata, collateral estoppel, qualified immunity, and statute of limitations in their Rule 12(c) motion. Thus, the Circuit Court properly took judicial notice of the [previous federal court] proceeding and its relevant orders and judgments in determining whether the claims in [the subsequent circuit court action between the same parties] are precluded or barred. Therefore, we conclude that the Circuit court [sic] did not err when it considered the orders and judgment from [the previous federal court action], but did not treat the motion [for judgment on the pleadings] as a motion for summary judgment under HRCP Rule 56.

Motoyama v. State, No. CAAP-13-0000168, 2016 WL 6879553, at *2 (Haw. App. Nov. 22, 2016), reconsideration denied, No. CAAP-13-0000168, 2016 WL 7330562 (Haw. App. Dec. 16, 2016), cert. denied, SCWC-13-0000168, 2017 WL 1075483 (Haw. Mar. 22, 2017), cert. denied sub nom. Montoyama [sic] v. Hawaiʻi Dep't of Transp., No. 16-1544, 138 S. Ct. 300 (Mem), 199 L. Ed. 2d 42 (U.S. Oct. 2, 2017).

All of the matters outside the pleadings presented by Indymac were subject to judicial notice by the circuit court, and by this court on appeal, under Rule 201 of the Hawaii Rules of Evidence.[8] Thus, in our de novo review of the circuit court's

_____

[8] The Hawaii Rules of Evidence provide, in relevant part:

**Rule 201 Judicial notice of adjudicative facts.**
(a) Scope of rule. This rule governs only judicial notice of adjudicative facts.

(b) Kinds of facts. A judicially noticed fact must be

decision, we apply the standard applicable to an HRCP Rule 12(c) motion for judgment on the pleadings.

> In a motion for judgment on the pleadings under HRCP Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law.  In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.
>
> Our task on appeal is to determine whether the circuit court's order supports its conclusion that the movant is entitled to judgment as a matter of law and, by implication, that it appears beyond a doubt that the nonmoving party can prove no set of facts in support of its claim that would entitle it to relief under any alternative theory.

In re Off. of Info. Pracs., 147 Hawaiʻi at 294, 465 P.3d at 741 (citing Ruf v. Honolulu Police Dep't, 89 Hawaiʻi 315, 319, 972 P.2d 1081, 1085 (1999)) (cleaned up).  We are not, however, required to accept conclusory allegations on the legal effect of the facts alleged.  Cf. Kealoha, 131 Hawaiʻi at 74, 315 P.3d at 225 (noting on HRCP 12(b)(6) motion to dismiss, court is not required to accept conclusory allegations on legal effect of events alleged).

Within this framework we examine each of the Khaleghis' points of error and arguments.

### 1.    Indymac established a foundation for applying the preclusive doctrines.

The Khaleghis contend that Indymac "did not establish the right to assert res judicata in the first instance."  They argue that Indymac's motion for judgment on the pleadings cited

---

> one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> . . . .
>
> (d) When mandatory.  A court shall take judicial notice if requested by a party and supplied with the necessary information.

section 24 of the Restatement (Second) of Judgments, which deals with merger and bar, not claim preclusion. But Indymac's motion also cited <u>Esteban</u> and argued that claim preclusion applied when:

> (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) **the claim presented in the action in question is identical to** the one decided in the original suit, or to **a claim or defense that might have been properly litigated in the first action but was not litigated or decided**.

<u>Esteban</u>, 129 Hawaiʻi at 160, 296 P.3d at 1068 (emphasis added).

Indymac satisfied the first element by presenting copies of the Foreclosure Judgment, the Judgment Confirming Sale, the Deficiency Judgment, and our summary disposition order in <u>Khaleghi I</u>. It was appropriate for the circuit court to take judicial notice of the judgments entered in the Foreclosure Action, and of the appellate disposition of <u>Khaleghi I</u>.

Indymac satisfied the second element because the Khaleghis' corrected amended complaint alleged, and Indymac did not dispute, that the Khaleghis and Indymac Venture were the parties to the Foreclosure Action, and that OneWest Bank was Indymac Venture's successor-in-interest to the Khaleghis' note and mortgage and the Deficiency Judgment.

Indymac satisfied the third element by providing copies of the Khaleghis' HRCP Rule 60(b)(4) motion for relief from the Foreclosure Judgment and the order denying the motion; the Khaleghis' motion to set aside their defaults and the order denying that motion; the Khaleghis' opposition to Indymac's motion to confirm the foreclosure sale and the order confirming the sale; and the Deficiency Judgment.

Indymac's motion also provided a foundation for application of issue preclusion (collateral estoppel).

> Collateral estoppel is an aspect of res judicata which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in

12

> that suit and who [them]self raised and litigated the fact or issue.
>
> To establish collateral estoppel and thereby bar the relitigation of the issue, four requirements must be met: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

Kahoʻohanohano v. Dep't of Hum. Servs., 117 Hawaiʻi 262, 302, 178 P.3d 538, 578 (2008) (cleaned up) (emphasis omitted) (reformatted).

And Indymac's motion provided a foundation for application of the collateral attack doctrine. "A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." In re Gentry Revocable Tr., 138 Hawaiʻi at 168–69, 378 P.3d at 884-85 (cleaned up).

> The party asserting that an action constitutes an impermissible collateral attack on a judgment must establish that: (1) a party in the present action seeks to avoid, defeat, evade, or deny the force and effect of the prior final judgment, order, or decree in some manner other than a direct post-judgment motion, writ, or appeal; (2) the present action has an independent purpose and contemplates some other relief or result than the prior adjudication; (3) there was a final judgment on the merits in the prior adjudication; and (4) the party against whom the collateral attack doctrine is raised was a party or is in privity with a party in the prior action.

Id. at 169, 378 P.3d at 885 (citation omitted).

It was appropriate for the circuit court to take judicial notice of the documents proffered by Indymac, and to determine the nature of the various claims and issues that were litigated and decided, or that might have been litigated and decided, in the Foreclosure Action.

> 2.    **The circuit court could properly have applied any of the preclusive doctrines to the Khaleghis' UDAP and unjust enrichment claims.**

The Khaleghis' corrected amended complaint alleged:

45.    While [Indymac's motion for summary judgment and interlocutory decree of foreclosure] was pending, in early-December 2010, a bona fide offer was made on the Property by a third-party would-be purchaser in the amount of $3,400,000.00.

46.    [The Khaleghis] requested that [Indymac] approve a short-sale of the Property in this amount, which [Indymac] rejected.  This discussion provided [Indymac] with notice of the market value of the Property at that time.

    . . . .

49.    [Indymac], after rejecting the $3.4 million offer, proceeded with the Motion for Summary Judgment. . . .

50.    On or about February 16, 2011, the Court issued its Findings of Fact and Conclusions of Law and an Order awarding Summary Judgment to INDYMAC VENTURE in [the Khaleghis'] absence and calculating the total amounts owed by [the Khaleghis] to INDYMAC VENTURE as being $5,057,982.83 with interest accruing at $516.27 per day, other late charges and attorneys' fees.

51.    The Court also ordered that INDYMAC VENTURE was entitled to a deficiency judgment against [the Khaleghis] for any difference between the amount owed under the Loan and the proceeds of the sale of the Property.

    . . . .

63.    Here, [Indymac] rejected the December 2010 $3.4 million offer made at fair market value, allowed interest, penalties and chargeable costs to accrue, took steps to dampen competitive bidding, and then bid a fraction of the fair market value of the Property (26% to be precise), only because [Indymac] knew that [the Khaleghis] would be required to make up any short fall by means of a deficiency judgment and had the means to do so.

    . . . .

66.    [Indymac], therefore, circumvented the mechanisms built into the judicial foreclosure process to protect debtors by: (i) obfuscating and failing to adequately disclose to [the Khaleghis] the potential for a deficiency judgment; (ii) failing to properly serve process on [the Khaleghis] in a manner that would have provided notice of the action and the relief [Indymac was] seeking; and (iii) proceeding thereafter in a manner ensured [sic] the sale of the Property at below market value and below reasonable value at the direct expense of [the Khaleghis].

> 67.    [The Khaleghis] were never given a fair opportunity to protect themselves from the foregoing unfair and deceptive conduct, and the lack of such opportunity itself arose from [Indymac's] abuse of judicial process, unfair and deceptive lending practices and unfair and deceptive servicing practices.

We first address the Khaleghis' allegation that Indymac failed "to adequately disclose to [them] the potential for a deficiency judgment[.]"  Paragraph 2.f. of Indymac's Foreclosure Action complaint prayed:

> if the proceeds of the [foreclosure] sale shall be insufficient to pay the aforesaid sums to [Indymac] and it shall appear that a deficiency exists, deficiency judgment shall then be entered against Defendants KHALEGHI, jointly and severally, and that [Indymac] have execution thereof.

The Khaleghis each submitted a declaration in support of their HRCP Rule 60(b)(4) motion for relief from the Foreclosure Judgment that stated: "I did not file a motion to set aside the default because IndyMac had attempted service under HRS §§ 634-23 and 634-24, indicating an intention not to seek deficiency judgment against me."  The Khaleghis cite no evidence that IndyMac made any representation to them inconsistent with the prayer for a deficiency judgment made in the Foreclosure Action complaint.  We find none in the record.  The Khaleghis' subjective belief that they would not be personally liable for any deficiency was induced by their mistaken interpretation of the law, not by any act or omission of Indymac.

The Khaleghis make five other arguments about why claim preclusion should not have been applied.  **First**, the Khaleghis contend that claim preclusion is a common law defense that cannot defeat a statutory UDAP claim, citing Davis v. Wholesale Motors, Inc., 86 Hawaiʻi 405, 949 P.2d 1026 (App. 1997).

Davis is inapposite.  In that case the plaintiff sued Wholesale Motors for, among other things, UDAP under HRS § 480-2 in connection with the sale of a car.  Wholesale Motors counterclaimed, alleging fraud, breach of contract, negligence, and malicious conduct by Davis.  After a bench trial the court

found that Davis: made material misrepresentations on his credit application with the intent to deceive Wholesale Motors; wrote a check for the down payment that was dishonored for insufficient funds; and falsely stated that he owned his trade-in vehicle free and clear of any liens.  The trial court also found that Davis and Wholesale Motors "deceived each other into entering into the transaction."  Id. at 413, 949 P.2d at 1034.  The trial court concluded, in relevant part:

> 5.    *The conduct of Wholesale Motors through its employees, agents and representatives and the conduct of [Davis] were reprehensible, grossly unfair, and deceptive*.  Essentially, they were attempting to "cheat" each other. . . .
>
> *Wholesale Motors may not be held liable to [Davis] on a claim of unfair or deceptive trade practice; i.e., HRS § 480-2.  [Davis] was not an "innocent" consumer*.  He too engaged in unfair and deceptive acts, representations, and practices with respect to the transaction.

Id. (cleaned up).  In Davis the defendant argued that the plaintiff's unclean hands barred the plaintiff from maintaining a statutory UDAP claim.  We disagreed, holding that the equitable "unclean hands" defense is not an affirmative defense to a statutory UDAP claim.  Id. at 418, 949 P.2d at 1039.

Claim preclusion and issue preclusion are legal, not equitable, defenses.

> [U]nlike equitable estoppel, res judicata is a rule not only "of fundamental and substantial justice" and "private peace" but of "public policy."  Some courts have classified this as the doctrine's primary purpose. See Buromin Co. v. Nat'l Aluminate Corp., 70 F.Supp. 214, 217 (D. Del. 1947) ("The doctrine of res judicata is **primarily one of public policy** and only secondarily of private benefit to the individual litigants.  It has its roots in the maxim that it concerns the public that there be an end to litigation when one party has had a full and free opportunity of presenting all the facts pertinent to the controversy.")[.]  Some commentators argue this distinction is significant enough that "**in contemporary practice, [claim and issue preclusion] are not considered estoppels at all in spite of their nomenclature**." Brown, supra, at 376.

Priceline.com, Inc. v. Dir. of Tax'n, 144 Hawaiʻi 72, 85, 436 P.3d 1155, 1168 (2019) (cleaned up) (emphasis added) (citing Christopher Brown, A Comparative and Critical Assessment of

Estoppel in International Law, 50 U. Miami L. Rev. 369, 376
(1996)).  The collateral attack doctrine is also a legal, not an
equitable, concept.  In re Gentry Revocable Tr., 138 Hawaiʻi at
168, 378 P.3d at 884 (applying de novo standard of review to
applicability of collateral attack doctrine).

        We have applied claim preclusion to preclude
relitigation of a plaintiff's UDAP claim which was based upon
allegations "substantively similar to claims found in its
counterclaim" in a prior action.  Aloha Unlimited, Inc. v.
Coughlin, 79 Hawaiʻi 527, 536-37, 904 P.2d 541, 550-51 (App.
1995).  The supreme court has applied claim preclusion to
preclude relitigation of other consumer protection statutes.
Esteban, 129 Hawaiʻi at 160-62, 296 P.3d at 1068-70 (applying
claim preclusion to federal Truth in Lending Act claim).

        Here, Indymac does not contend that the Khalegis'
unclean hands bar them from maintaining their statutory UDAP
claim; it is the Khalegis who contend that Indymac's unclean
hands bar Indymac and OneWest from relying on the legal defense
of claim preclusion.  The Khalegis are collaterally attacking the
Deficiency Judgment; that contravenes the policy behind claim
preclusion by encouraging, instead of preventing, a multiplicity
of suits and limitless litigation.  See Esteban, 129 Hawaiʻi at
159, 296 P.3d at 1067.  The Khaleghis have cited no case law
equitably barring a defendant from asserting claim preclusion to
defend against a collateral attack on a final judgment.

        The Khaleghis' potential remedies for Indymac's
allegedly inequitable conduct in the Foreclosure Action would
have been to oppose confirmation of the foreclosure sale, to
oppose entry of the Deficiency Judgment, or to seek relief from
the Deficiency Judgment under HRCP Rule 60(b)(3) ("(3) fraud
. . . , misrepresentation, or other misconduct of an adverse
party.").  Claim preclusion, issue preclusion, and the collateral
attack doctrine would not have applied to those remedies.  See
Godinez, 148 Hawaiʻi at 327-28, 474 P.3d at 268-69 (noting that
claim preclusion and issue preclusion do not apply to an HRCP

Rule 60(b) motion, because "an HRCP Rule 60(b) motion is a continuation of the original action.").

**Second**, the Khaleghis contend that claim preclusion is an equitable defense that should not have been available to Indymac, which had unclean hands. As stated above, claim preclusion, issue preclusion, and the collateral attack doctrine are legal, not equitable, defenses. Priceline.com, 144 Hawaiʻi at 85, 436 P.3d at 1168; In re Gentry Revocable Tr., 138 Hawaiʻi at 168, 378 P.3d at 884.

**Third**, the Khaleghis contend that their UDAP and unjust enrichment claims should not have been precluded because the Foreclosure Judgment, the Judgment Confirming Sale, and the Deficiency Judgment were procured by fraud. But the Khaleghis never moved to set aside any of the judgments because of fraud pursuant to HRCP Rule 60(b)(3), under which claim and issue preclusion would not have applied. See Godinez, 148 Hawaiʻi at 327-28, 474 P.3d at 268-69. Rather, the Khaleghis' corrected amended complaint sought equitable relief and treble damages based on alleged misconduct that was, or could have been, alleged in the Foreclosure Action, and that were, or could have been, finally decided in Khaleghi I.

**Fourth**, the Khaleghis contend that their UDAP and unjust enrichment claims are based upon Indymac's conduct _after_ the foreclosure complaint was filed. That is true. But they then argue that their UDAP and unjust enrichment claims should not have been precluded because they had no opportunity to actually litigate those claims in the Foreclosure Action. That is only partly true.

Indymac's allegedly unfair and deceptive refusal to consent to the $3.4 million third-party offer and to seek an allegedly inflated deficiency judgment was presented to the circuit court in the Foreclosure Action (in the Khaleghis' opposition to Indymac's motion to confirm the foreclosure sale, in their motion to set aside their defaults, and in their HRCP Rule 60(b)(4) motion). The _facts_ upon which the Khaleghis' UDAP

and unjust enrichment claims are based were at issue in the Foreclosure Action; they formed the basis for entry of the Confirmation of Sale Judgment and calculation of the Deficiency Judgment. The UDAP claim, being based upon Indymac's alleged misconduct during the Foreclosure Action before entry of the Deficiency Judgment, could have been asserted as a counterclaim in the Foreclosure Action (had the Khaleghis not defaulted). Cf. Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 263, 428 P.3d 761, 775 (2018) (holding that a foreclosure defendant may bring a counterclaim for wrongful foreclosure before the foreclosure actually occurs).

Issue preclusion precludes "the relitigation of a fact or issue that was previously determined in a prior action on a different claim or cause of action between the same parties or their privies" and only applies "if the particular issue in question was actually litigated, finally decided, and essential to the earlier valid and final judgment." Uyeda v. Schermer, 144 Hawaiʻi 163, 173, 439 P.3d 115, 125 (2019) (citing Dannenberg v. State, 139 Hawaiʻi 39, 59-60, 383 P.3d 1177, 1197-98 (2016)) (other citation omitted). Under such circumstances the Khaleghis are precluded from relitigating the issues which were presented to the circuit court in the Foreclosure Action: whether Indymac's failure to consent to the $3.4 million offer was unreasonable under the circumstances; whether the high bid of $2.788 million at the re-opened foreclosure auction was reasonable; and whether the resultant $2.5 million Deficiency Judgment was legally invalid. The Khaleghis are also precluded from collaterally attacking the Foreclosure Judgment, the Confirmation of Sale Judgment, and the Deficiency Judgment in this action alleging UDAP and unjust enrichment.

**Fifth**, the Khaleghis contend that res judicata should not apply because had they not defaulted in the Foreclosure Action, "the unfair and deceptive acts of [Indymac] could have been developed through discovery and used to defend against the deficiency[.]" The Khaleghis moved to set aside their defaults

in the Foreclosure Action. Their motion was denied. They did not appeal from the order denying their motion to set aside their defaults. They cite no legal authority for the proposition that judgment debtors can collaterally attack a default judgment by contending, in a subsequent lawsuit, that their defaults should have been set aside. Khaleghi I precludes the Khaleghis from pursuing claims that the Foreclosure Judgment, the Judgment Confirming Sale, and/or the Deficiency Judgment resulted from unfair or deceptive acts or practices by Indymac, or that Indymac was unjustly enriched by the Deficiency Judgment. That is the case under claim preclusion, issue preclusion, and the collateral attack doctrine. The circuit court acknowledged this when it stated:

> [S]uccessful prosecution of [the Khaleghis'] claims would effectively nullify . . . : One [sic], foreclosure judgment; two, the order denying [the Khaleghis'] motion for relief; three, the order denying [the Khaleghis'] motion to set aside default; four, the order denying [the Khaleghis'] motion to stay proceedings; five, the confirmation [of sale] order; and six, the deficiency judgment; and seven, the ICA decision [in Khaleghi I].
>
> [The Khaleghis] agree that the essence of their claim is that the bank wrongfully rejected a higher offer on the property in October 2010 and that they were lulled into nonaction in the foreclosure matter. [The Khaleghis'] argument is that the bank depressed the value of the home . . . in the foreclosure matter. The same is true for the arguments that the borrowers were wrongfully lulled into believing that there would be no deficiency judgment. The same factual basis on the foreclosure matter is even used to support these arguments [in the corrected amended complaint].
>
> If the Court were to change its mind now, it would effectively nullify the Court's prior rulings. Moreover, the Court cannot provide the borrowers their requested relief without effectively reversing the deficiency judgment and the rulings that gave rise to the deficiency judgment. The Court is not going to do that.

The circuit court did not err by granting Indymac's motion for judgment on the pleadings.

###### 3. The circuit court did not err by dismissing the Khaleghis' corrected amended complaint with prejudice.

The Khaleghis contend that their UDAP and unjust enrichment claims should not have been dismissed, but rather, "discovery should have been allowed into those areas where the [corrected amended complaint] and [Indymac] disputed [sic] the facts applicable to the latter's right to assert res judicata." But Indymac's motion was decided under HRCP Rule 12; the Khaleghis introduced no evidence outside the pleadings to convert the motion to one under HRCP 56. Moreover, the Khaleghis did not submit to the circuit court the affidavit or declaration required by HRCP Rule 56(f).[9] Finally, the Khaleghis do not explain what facts they hoped to discover that would affect the applicability of claim preclusion, issue preclusion, or the collateral attack doctrine. The circuit court did not err by dismissing the Khaleghis' corrected amended complaint with prejudice.

###### 4. The circuit court did not err by failing to rule on the choice of law issue.

The Khaleghis contend that the circuit court erred by failing to apply California law, under which the Khaleghis could only be liable to Indymac up to the value of the foreclosed property. The Khaleghis raised the choice of law issue in their HRCP Rule 60(b)(4) motion for relief from the Foreclosure Judgment. The circuit court applied Hawaiʻi law and eventually entered the Deficiency Judgment. The Khaleghis could and should

---

[9]     HRCP Rule 56 provides, in relevant part:

> **(f) When affidavits are unavailable.** Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The affidavit of the Khaleghis' counsel attached to their memorandum in opposition to Indymac's motion was conclusory and did not contain the information required by HRCP Rule 56(f).

have raised the choice of law issue in the appeals that resulted in <u>Khaleghi I</u>.  Their attempt to collaterally attack the Deficiency Judgment in this case is without merit.

> **5.    The circuit court did not err by not granting the Khaleghis leave to amend their corrected, already-amended complaint.**

The Khaleghis contend that the circuit court should have granted them leave to amend their corrected, already-amended complaint "to set forth in more detail the grounds on which they contended that res judicata did not apply[.]"  Further amendment would have been futile because the alleged misconduct forming the basis for the Khaleghis' UDAP and unjust enrichment claims occurred before entry of the Deficiency Judgment; the Khaleghis have not argued that anything Indymac did, or failed to do, ***after*** entry of the Deficiency Judgment could form the factual basis for their UDAP or unjust enrichment claims.  <u>See</u> <u>Off. of Hawaiian Affs. v. State</u>, 110 Hawaiʻi 338, 365, 133 P.3d 767, 794 (2006) (noting that leave to amend complaint may be denied where proposed amendments are futile).

## CONCLUSION

For the foregoing reasons, the Final Judgment entered by the circuit court on January 11, 2017, is affirmed.

DATED:  Honolulu, Hawaiʻi, February 23, 2022.

On the briefs:

James J. Bickerton,
Stephen M. Tannenbaum,
for Plaintiffs-Appellants.

Jesse W. Schiel,
Nicholas R. Monlux,
Gabriele V. Provenza,
for Defendants-Appellees.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

22